[Cite as *State v. Patrick*, 2016-Ohio-3283.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 14 MA 93 |
| V. | ) | |
| | ) | OPINION |
| KYLE PATRICK, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:　　Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 12 CR 969

JUDGMENT:　　Reversed and Remanded

APPEARANCES:

For Plaintiff-Appellee　　Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant　　Attorney Edward A. Czopur
42 North Phelps St.
Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Robb

Dated: June 1, 2016

DONOFRIO, P.J.

{¶1} Defendant-appellant, Kyle Patrick, appeals the decision of the Mahoning County Common Pleas Court denying his presentence motion to withdraw his guilty plea.

{¶2} On September 27, 2012, Appellant was indicted and charged with aggravated murder (R.C. 2903.01(B)(F)) with a firearm specification (R.C. 2941.145(A)); aggravated robbery (R.C. 2911.01.01(A)(1)(C)) with a firearm specification (R.C. 2941.145(A)); and tampering with evidence (R.C. 2912(A)(1)(B)). At the time, Appellant was 17 years of age. On August 24, 2012, the Juvenile Court filed an Agreed Judgment Entry relinquishing jurisdiction and transferring this matter to the General Division of the Court of Common Pleas.

{¶3} On February 10, 2014, the day he was scheduled for trial, Appellant plead guilty to murder (R.C. 2903.02(A)(D)); aggravated robbery (R.C. 2911.01(A)(1)(C)); tampering with evidence (R.C. 2921.12(A)(1)(B)); and two firearm specifications with regard to the murder and aggravated robbery (R.C. 2941.141). His plea was the result of last minute negotiations with Plaintiff-appellee, State of Ohio, before the commencement of trial.

{¶4} During the plea hearing on February 10, 2014, the trial court explained to Appellant that he was not eligible for community control, that he would be going to prison, and that he could be sentenced to 15 years to life for murder; one year for the firearm specification that had to be served prior to and consecutive to the sentence for murder (in other words, 16 years to life for these two convictions); a maximum of 11 years for aggravated robbery; and a maximum of three years for tampering to run concurrently with the murder sentence. Appellant indicated that he understood. (2-10-14, Tr. 14). The trial court then indicated it would follow the State's recommendation that Appellant be sentenced to 16 years to life, i.e., 15 years to life on the murder and one year on the firearm specification to run consecutively, 11 years for aggravated robbery to run concurrently with the foregoing, and 36 months for tampering, also to be served concurrently. (2-10-14, Tr. 8). The trial court ordered a presentence investigation and set sentencing for March 10, 2014.

**{¶5}** On February 18, 2014, Appellant, pro se, filed his "NOTICE OF WITHDRAWAL OF GUILTY PLEA" and asserted that since he had not been sentenced, he did not need to state a cause for his withdrawal.

**{¶6}** On March 7, 2014, counsel for Appellant also filed a motion to withdraw the guilty plea asserting, *inter alia*, that the motion should be granted because Appellant had not been provided sufficient time to appreciate the consequences of his plea; that Appellant timely indicated his desire to withdraw his plea; and that the granting of the motion would not prejudice the State.

**{¶7}** The State filed a Memorandum Contra to Appellant's motion on April 2, 2014. The State asserted that Appellant failed to satisfy the legal criteria to justify the granting of his motion; Appellant had competent counsel; he was given a full hearing to discuss the terms and conditions of his plea; he failed to give a reasonable and legitimate basis for the withdrawal of his plea; and the State had released witnesses who subsequently moved out of town and halted its investigation and preparation for trial.

**{¶8}** The trial court held the first hearing on Appellant's motion on April 28, 2014. During the hearing, the trial court discussed factors to be considered in deciding whether or not to grant the motion, heard the testimony of Appellant, and heard argument from counsel for both parties.

**{¶9}** The assistant prosecuting attorney with the most knowledge as to whether or not the State would be prejudiced by the granting of Appellant's motion was unable to attend the April 28, 2014, hearing. The trial court asked about the potential prejudice to the State: "Do you know if these witnesses are material or if they are, for lack of a better word, peripheral?" (4-28-14, Tr. 16). The assistant prosecutor attending on behalf of the State responded - "I do not know * * * don't want to misrepresent anything to the court." (4-28-14, Tr. 16).

**{¶10}** The trial court stated it did not feel comfortable ruling on the motion without knowing what the prejudice to the State might be – "If they are material witnesses, and if the state is going to be unable to proceed at trial as it relates to the

original indictment, then certainly that may be a very strong factor for me to consider in determining whether or not this motion should be granted." (4-10-14, Tr. 16-17).

{¶11} On May 15, 2014, approximately three months after Appellant filed his first notice indicating he wished to withdraw his plea, the State filed the affidavit of the assistant prosecutor who could respond to the trial court's concern about any prejudice to the State's case. That affidavit addressed the availability of four witnesses – Aric Longcoy, Chalsea Daviduk, Stephanie Daviduk, and a juvenile witness.

{¶12} With regard to Longcoy, the affidavit provided that Longcoy never appeared for an interview and did not respond to a subpoena. Longcoy's father said Longcoy was living on the street in Cleveland and had no address or telephone number. The affidavit stated that on the day of trial Longcoy called and said he was on his way. He then was told of the plea. He did not appear. The State has had no further contact with him. The affidavit said several other witnesses (unidentified) represented that Loncoy was going to move to Florida. The affidavit provided that Longcoy's testimony was "material and crucial" because he could identify Appellant, would provide information about the plan and motive of Appellant, and would provide evidence concerning Appellant's possession of the phone used to lure the victim into the hands of Appellant just prior to the alleged murder, something another witness (Reginald Whitfield) refused to do.

{¶13} As to the Daviduks, the affidavit indicated that they, too, did not appear before the day of trial and had moved to a new address. The Daviduks were to provide evidence regarding Appellant's destruction of evidence, including the gun, and the "victim's property in a Struthers dumpster."

{¶14} The State's affidavit stated that the juvenile witness was a known runaway and had been incarcerated in the Juvenile Justice Center at the time of trial but that her current location was unknown. The juvenile was to provide information as to Appellant's whereabouts after the murder. Later, Appellant would assert that he had located this witness at a treatment center in Lucasville. In response, affiant

stated - "I don't know how available to us she would be." (6-17-14, Tr. 9).

{¶15} Finally, affiant represented that she believed "all of these witnesses were material, that allowing the DEFENDANT to withdraw his plea would prejudice the State because we [the State] would have to start at square one in locating and maintaining a location on these witnesses." (Affidavit at ¶ 6).

{¶16} Prior to the date of trial, on February 6, 2014, the State filed a witness list containing 34 witnesses. It is unclear whether the juvenile identified in the affidavit is on the list. None of the other 30 witnesses are discussed anywhere in the record.

{¶17} A second hearing on the Appellant's motion to withdraw his plea was held on June 17, 2014. After hearing argument from both counsel, the trial court reviewed the criteria to be considered when ruling on a presentence motion to withdraw a plea. The trial court denied Appellant's motion and proceeded to sentence Appellant pursuant to the plea agreement and in accord with the State's recommendation set forth above. Appellant filed this appeal.

{¶18} Appellant sets forth one assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO WITHDRAW AND, IN SO DOING, ASSIGNED GREATER WEIGHT TO THE, ALLEGED, PREJUDICE TO THE STATE AS AGAINST ALL OTHER FACTORS FOR CONSIDERATION OF SUCH A MOTION.

{¶19} Crim. Rule 32.1, "Withdrawal of Guilty Plea", provides:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶20} The Rule distinguishes between a presentence motion to withdraw a guilty plea and a postsentence motion. A postsentence motion is allowed "to correct

manifest injustice."

**{¶21}** The Ohio Supreme Court has explained that Rule 32.1 provides no guidelines for a trial court when ruling on a presentence motion to withdraw a guilty plea. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992) (Moyer, C.J. and Brown, J., dissenting). The Supreme Court has explained that a pretrial motion to withdraw a plea is to be freely allowed and treated with liberality. *Id.* at 527. However, the Supreme Court also explained that one who enters a guilty plea has no absolute right to withdraw it. *Id.* It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion and that, unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion. *Id.* at 526. Thus, despite the fact that presentence motions are to be liberally granted, in reviewing the trial court's ruling an abuse-of-discretion standard is applicable. *Id.*

**{¶22}** In *Xie*, it was clear that the defendant was given erroneous advice by his counsel as to when he would be eligible for parole (he was told if he was convicted he would be eligible in a minimum of 23 years when he actually would have been eligible in 17 years). The trial court nonetheless denied the motion to withdraw the plea. The Tenth District Court of Appeals reversed the trial court asserting that the trial court incorrectly applied the "manifest injustice" standard. The Supreme Court disagreed and reinstated the trial court's decision denying the motion to withdraw the plea explaining:

> It is not the role of an appellate court to conduct a *de novo* review of a trial court's decision in these circumstances. We do not find that the trial court's decision was unreasonable, arbitrary or unconscionable. We therefore reverse the decision of the court of appeals that the trial court abused its discretion.

*Id.* at 527.

**{¶23}** The First Appellate District subsequently addressed the juxtaposition of a rule providing that presentence motions to withdraw a guilty plea should be freely

and liberally granted but in reviewing these decisions the abuse of discretion standard is to be used. In *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist. 1995), the court observed that the "liberally and freely" granted directive loses some meaning if the standard on review is "abuse of discretion" with no guidelines whatsoever. *Id.* at 239. Although this issue was moot in the *Fish* decision, the court addressed it nonetheless. It explained that lack of prejudice to the state is "simply one factor, albeit an extremely important factor, in the analysis of whether such a motion should be granted * * * there are numerous additional factors which should be weighed[.]" *Id.* at 240.

**{¶24}** This court has adopted the factors set forth in *Fish* to weigh in considering a presentence motion to withdraw a plea: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) whether the defendant understood the nature of the charges and potential sentences; (5) the extent of the hearing on the motion to withdraw; (6) whether the trial court gave full and fair consideration to the motion; (7) whether the timing of the motion was reasonable; (8) the reasons for the motion; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *See, e.g., State v. Thomas* (Dec. 17, 1998), 7th Dist. Nos. 96CA223, 96CA225, 96CA226 (Dec. 17, 1998), citing *Fish* at 240; *see also, State v. Adams*, 7th Dist. No. 12 MA 9, 2012-Ohio-5979; *State v. Morris*, 7th Dist. No. 13 MA 19, 2014-Ohio-882; and *State v. Peck*, 7th Dist. No. 14 MA 56, 2015-Ohio-1279. Consideration of the factors is a balancing test and no one factor is conclusive. *Fish* at 240. Since the *Fish* decision, many courts have used the *Fish* analysis. *See, e.g., State v. Jefferson*, 1st Dist. No. C-020802, 2003-Ohio-4308; *State v. Young*, 2d Dist. No. 2003 CA 89, 2004–Ohio–5794; *State v. Davison*, 5th Dist. No. 2008–CA–00082, 2008–Ohio–7037.

**{¶25}** The nine *Fish* criteria are discussed below.

<u>Would the granting of the motion prejudice the State?</u>

**{¶26}** Appellant emphasizes this *Fish* factor and argues that the trial court

gave undue weight to this factor instead of giving equal weight to all the factors. The State responds essentially arguing that its witnesses are transient and some have moved out of state. Thus, the State asserts it would be prejudiced by the granting of Appellant's motion. Even if it were not prejudiced by the granting of the motion, the State argues, citing *State v. Leasure,* 7th Dist. No. 01 BA 42, 2002-Ohio-5019, this is only one of the factors to be considered.

**{¶27}** At the first hearing on Appellant's motion on April 28, 2014, the trial court questioned the State regarding the possible prejudice to the State. The trial court indicated that it wanted to know who the witnesses were that left the state, whether the witnesses would return for trial, and whether their testimony was critical to the State's ability to proceed. (4-28-14, Tr. 18-19). A second hearing regarding this issue was eventually held on June 17, 2014.

**{¶28}** On May 15, 2014, the State filed the affidavit of an assistant prosecutor with knowledge about the possible prejudice to the State. The affiant identified four witnesses who affiant asserted were critical and potentially unavailable.

**{¶29}** The first witness, Aric Longcoy, was to testify about the identity, plan, and motive of Appellant. Loncoy also was to testify that Appellant had possession of the phone used to lure the victim to the scene of the murder. Another witness, Reginald Whitfield, refused to provide this testimony. However, the State's affidavit admits that Longcoy was previously scheduled for an interview in the prosecutor's office but never appeared. A subpoena was then served but, still, Longcoy did not appear. Longcoy's father apparently told the State that Longcoy was living on the street in Cleveland and had no address or phone. The State's affidavit explains that several attempts were made to contact Longcoy with no success. However, the affidavit states Longcoy called on the day of trial and said he was on his way. He did not appear after being told that a plea agreement was reached.

**{¶30}** Chelsea Daviduk and Stephanie Daviduk were also identified in the affidavit and were to provide testimony that Appellant destroyed evidence and about the location of the victim's property in a dumpster in Struthers, Ohio. However, the

State's affidavit, as with Loncoy, reveals that the Daviduks never appeared before the day of trial. The affidavit simply states that the Daviduks moved and are no longer at the same address. Appellant suggested at the second hearing on June 17, 2014, that Stephanie may already have been in Florida on the original trial date. (6-17-14, Tr. 5).

**{¶31}** The last witness identified is a juvenile and, on the date of trial, was incarcerated in the Juvenile Justice Center. She was to testify about Appellant's whereabouts after the murder. The affidavit provides that her current address was unknown. At the June 17, 2014 hearing, the Appellant suggested that this witness was in a treatment facility in Lucasville. The State's response was that it was unsure how available this witness might be.

**{¶32}** At the second hearing on June 17, 1014, scheduled specifically to allow the state to explain what prejudice it would suffer if Appellant's motion were granted, the State represented to the trial court that on the day of trial two witnesses appeared. The State did not identify the witnesses. (6-17-14, Tr. 9). Also, at that hearing, the State asserted it "would be prejudiced because of these ongoing witness problems, and these are transient people who have different addresses every other month, every other week. So we would be prejudiced." (6-17-14, Tr. 10).

**{¶33}** We note that Appellant's motion was timely filed within eight days of his plea. The State offered no evidence to demonstrate what it did, if anything, to locate these witnesses after Appellant's motion to withdraw was filed. We expressed a similar concern in *State v. Peck,* 7th Dist. No. 14-MA-56, 2015-Ohio-1279, at ¶ 25-26. The State's affidavit makes clear that Longcoy and the Daviduks never appeared before trial for even a meeting, and Longcoy ignored a subpoena. It is equally clear that the difficulty with these witnesses existed prior to the trial date and prior to the guilty plea. Under these circumstances, it is speculative as to if, and when, any of these witnesses might appear, regardless of Appellant's motion to withdraw his plea.

**{¶34}** The State never explained whether it could proceed, and to what degree of effectiveness, using the other identified 30 witnesses. (State's Witness List). At the April 28, 2014 hearing the State asserted "that there is a myriad of

evidence that shows that Mr. Patrick was there, that he participated not just in the murder, but in the tampering and the robbery as well." (4-28-14, Tr. 14). The State does not explain the importance of these four witnesses vis a vis the myriad of evidence and the other 30 witnesses.

**{¶35}** The State's failure to attempt to contact witnesses to determine their availability cannot form the basis of future prejudice. In *Peck,* the State argued that it had no contact with witnesses since the plea, that the availability of witnesses was in jeopardy, and that evidence might have been destroyed. This Court, noting the failure to attempt to contact witnesses and the fact that possible destruction of evidence was only speculation, concluded that this factor weighed in favor of neither party. *Peck* at ¶ 26.

**{¶36}** After hearing argument on this issue, the trial court stated:

* * * but my determination as I think I indicated at the last hearing rises or falls on the potential prejudice to the state. And, there is, in fact, an affidavit before me indicating that Eric [sic] Longcoy is material and crucial to the prosecution because he provides evidence which establishes the identity of the defendant; plan and motive; that he puts the phone used to lure the victim in the defendant's hands just prior to the murder; that Longcoy never appeared for an interview at the prosecutor's office. Although a subpoena was issued, he did not appear pursuant to that subpoena, and that his father indicated that he was living on the streets in Cleveland without an address. And that although on the day of trial he called and said he was on his way, once the fact that the plea was negotiated, was relayed to him, there's been no contact, and through several other witnesses, the state avers in the affidavit that it was his intention to move to Florida.

(6-17-14, Tr. 15-17).

**{¶37}** The issue presented to the trial court was whether the granting of

Appellant's motion would prejudice the State. We find that any prejudice to the State in light of these facts is supposition. Thus, this factor weighs in favor of granting Appellant's motion. We also find that the trial court placed undue weight on this factor as compared to the other *Fish* factors.

<u>Whether Appellant was represented by competent counsel</u>

**{¶38}** Prior to the date of the plea, there was apparently little, if any, discussion about a plea agreement. This was, allegedly, because Appellant wanted "straight time." The State would not agree.

**{¶39}** On the morning of the trial, when the plea offer was made, Appellant discussed the plea with his family who encouraged him to accept the offer. Appellant's counsel recommended against accepting the offer. Appellant asked if he could "sleep on it" but his counsel responded that this was not possible. (4-28-14, Tr. 3-4). The day before the trial, Appellant received over 900 pages of discovery from his counsel. He spent a good part of the night before trial reading these documents. He testified that he did not understand all of the materials. (4-28-14, Tr. 10-11). Counsel explained that withholding discovery from his client until the eve of trial was a strategic move. The trial court commented that as a prior trial counsel, he could understand this to be a strategic decision. (Apparently, since Appellant was incarcerated, there was concern about possible discussions regarding the evidence with others who were incarcerated). Appellant, while not otherwise questioning the competency of counsel, contends that not giving Appellant adequate time to digest this information hindered his ability to make an informed decision about the plea offer.

**{¶40}** The State notes that the trial court observed that withholding discovery is understandable as a strategic decision – "I certainly understand trial strategy. It certainly sounds like a very good reason why discovery might be withheld from a client until the eve of trial." (4-28-14, Tr. 17). Further, the State notes that Appellant expressed complete satisfaction with counsel at the plea hearing. (2-10-14, Tr. 9). Thus, the State contends that this explanation fails to support the reversal of the trial

court's decision.

**{¶41}** Troubling is the fact that counsel told Appellant that it was not possible to secure an additional day to consider the plea offer. The basis for this comment is not clear from the record, and since counsel did not ask for additional time, we can only speculate as whether additional time would have been granted by the court or the prosecutor.

**{¶42}** Although counsel was competent, this factor weighs in Appellant's favor as additional time could have been requested by counsel when Appellant was making such an important decision as this one, especially where he received different opinions from counsel and family members, as was mentioned above.

<u>Whether Appellant was given a full Criminal 11 hearing before his plea</u>

**{¶43}** Appellant does not contend that the Crim.R. 11 plea colloquy supports a reversal except to the extent that it relates to whether or not Appellant understood the nature of the charges against him and the possible penalty. These concerns are discussed below. This factor, then, weighs against Appellant.

<u>Whether the accused understood the nature of the charges and possible</u>
<u>penalties</u>

**{¶44}** Appellant contends that he did not understand the effect of the life sentence and thought he would be released after 16 years. He also claims he did not understand that he would have to face a parole board before he could be released. (Appellant's Brief, p. 6). At the April 28, 2014 hearing on his motion, Appellant testified: "And then the next day I was brought here and offered a deal for 16 years to life that I thought maybe would be a good deal, but didn't know that I would have to see the parole board in 16 years * * *." (4-28-15, Tr. 11).

**{¶45}** Appellant does not assert that the trial court was under any legal obligation to discuss the role of the parole board regarding Appellant's potential release from prison, only that he did not understand its involvement.

**{¶46}** Appellant signed a written plea that did not discuss the parole board issue. Neither was there any discussion of the parole board's role at the plea hearing.

The plea agreement did state that the sentence would be 16 years to life. There is nothing in the record that suggests, as he now argues, that this was "straight time" and that he would, in fact, necessarily be released after 16 years. But, when combined with his timely request to withdraw and the need to make an immediate decision, it is likely that he did not fully understand the implication of the life sentence and the future need to face the parole board. Since a presentence motion to withdraw a plea is to be freely and liberally granted, this factor weighs in Appellant's favor.

<u>Whether a full hearing was held on the motion</u>

**{¶47}** Appellant does not assert any problem with the trial court's compliance with this requirement. This weighs against Appellant.

<u>Whether the trial court gave full and fair consideration to the motion</u>

**{¶48}** Appellant contends that "the trial court indicated that the entire motion rises or falls on prejudice to the State." (Appellant's Brief, p. 7). The first hearing on Appellant's motion was continued to allow the State to have the appropriate prosecuting attorney appear to answer questions with regard to any prejudice to the State. The trial court stated that this was necessary to give a full and complete hearing on Appellant's motion to withdraw. (4-28-14, Tr. 18-19).

**{¶49}** Then, at the next hearing, the trial court, immediately before denying Appellant's motion and sentencing him, stated: "but my determination as I think I indicated at the last hearing rises or falls on the potential prejudice to the state." (6-17-14, Tr. 15-16). Appellant contends that this demonstrates that the trial court failed to give fair consideration to his motion.

**{¶50}** The trial court did hear Appellant with regard to his motion at two hearings. During his first hearing, counsel noted that at the time of the indictment Appellant was a juvenile, counsel explained the lack of plea negotiations up to the day of trial and what happened on the day of trial, his concern about Appellant's ability to digest all the information he was receiving, and Appellant's request to "sleep on it". Counsel explained that Appellant discussed the plea offer with his family.

Counsel told the trial court that he recommended that Appellant not accept the plea. Counsel told the trial court that it was Appellant's desire now to go to trial, that the motion was timely filed, and that Appellant did not initially understand that he would need to appear before a parole board to secure a release from prison. Appellant now asserted his innocence.

{¶51} Appellant testified at that hearing about his difficulty trying to read 900 pages of discovery the evening before trial and that he had to make a life changing decision in a short period of time. He testified that he asked his counsel if he could have more time to think about the offer but was told he could not.

{¶52} The trial court also listened to arguments by the State. At the end of the hearing, the trial court continued the hearing to allow the State to bring in another assistant prosecutor to explain the prejudice to the State. A second hearing on the motion was held to allow the State the opportunity to demonstrate possible prejudice to the State. The trial court afforded each side an opportunity to present its case and argument. Thus, we conclude that the trial court gave full and fair consideration to the motion. This factor, then, weighs against Appellant.

Whether the motion was made within a reasonable time

{¶53} The State concedes that the motion was timely filed and that this fact weighs in favor of granting Appellant's motion.

Whether the motion sets out specific reasons for the withdrawal

{¶54} Appellant asserts three reasons for his request to withdraw his plea. First, he is innocent and wishes to proceed to trial. Second, he did not understand the effect of a life sentence on his release. Third, he did not have enough time to make an informed decision. (4-28-14, Tr. 3-4; 10-11).

{¶55} The State responds indicating that Appellant's reasons are nothing more than a "change of heart." (Appellee's Brief, p. 11).

{¶56} In *Adams*, defendant engaged in plea negotiations for over two years during the pendency of the matter. On either the day before or the morning of trial, the State agreed to a lower recommendation. The State indicated there was a day

and half of extensive negotiations. This Court nonetheless indicated these facts weighed in favor of the defendant. *Adams* at ¶ 33.

**{¶57}** Here, Appellant complains that he is innocent, that he did not understand the effect of a life sentence with regard to his future release from prison, and that he did not have enough time to make an informed decision. These reasons, coupled with the timely notice that he wished to withdraw his plea, are more than a simple change of heart and support Appellant's motion.

The Existence of a Meritorious Defense

**{¶58}** At the first hearing on his motion, Appellant asserted his innocence – "You got the wrong guy * * * I didn't do it, Your Honor." (4-28-14, Tr. 11). He told the trial court he could prove he did not commit the murder and he wanted the victim's family to know he did not hurt the victim. (4-28-14, Tr. 11). This is the only evidence in the record regarding guilt or innocence.

**{¶59}** The State, relying on *State v. Kramer*, 7th Dist. No. 01-CA-107, 2002-Ohio-4176*, ¶* 58, claims that Appellant's assertions are nothing more than a change of heart. In *Kramer*, defendant argued both innocence and self-defense. This Court concluded that these assertions added little if any weight to defendant's reasons for withdrawing her plea. *Kramer* at ¶ 53.

**{¶60}** This Court is cognizant of the difficulty in determining the merits of a defense prior to the presentation of any evidence. We cannot conclude, as the State argues, that Appellant's motion here is just a change of heart. Thus, we find that this factor is either neutral and neither weighs for or against the granting of Appellant's motion to withdraw his plea.

Conclusion

**{¶61}** According to *Xie,* presentence motions to withdraw a plea are to be liberally granted. Keeping this principle in mind, we have reviewed whether or not the trial court abused its discretion in ruling on the presentence motion to withdraw the plea in light of the nine factors found in *State v. Fish*. We conclude that the totality of all of the factors weigh in Appellant's favor and that the trial court abused its

discretion by giving undue weight to the possible prejudice to the State.

**{¶62}** Accordingly, Appellant's assignment of error is sustained. For the reasons cited above, the trial court's judgment denying Appellant's motion to withdraw his guilty plea is reversed. This cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.

DeGenaro, J., concurs.

Robb, J., dissents with attached dissenting opinion.

Robb, J., dissenting opinion.

**{¶63}** I respectfully dissent to the ruling that the trial court abused its discretion in denying Appellant's plea withdrawal motion. I cannot find the trial court's decision in this case was unreasonable, unconscionable, or arbitrary as required by the *Xie* case. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992) (and the decision must be more than a mere error of law or judgment). Although a presentence motion to withdraw a guilty plea should be "freely and liberally" granted, this standard should not be employed for construing the evidence on each individual plea withdrawal factor to find it favorable to the defendant and then again as all factors are reviewed collectively. Rather, it is an overriding premise governing the trial court's exercise of discretion while weighing the various factors.

**{¶64}** Notably, the *Fish* factors are court-created guidelines to benefit courts in exercising their discretion. Consideration of the factors is a balancing test, and no one factor is conclusive. *State v. Jones*, 7th Dist. No. 09-MA-144, 2011-Ohio-1648, ¶ 30. In fact, the list is non-exhaustive. *State v. Easterly*, 7th Dist. No. 12 MA 208, 2013-Ohio-2961, ¶ 25. It is squarely within the province of the trial court to assess credibility of those making the various claims involved in presenting certain factors. "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶65}** Appellant's motion to withdraw his guilty plea was filed expeditiously. Yet, it contained no reasons for plea withdrawal. Counsel's subsequent supplemental motion merely said Appellant had insufficient time to fully appreciate the consequences of the plea offer. Additional reasons disclosed at the hearing were not provided in the filings, e.g., he did not realize the parole board would be the entity to decide whether he would be released after sixteen years in a sentence of sixteen years to life, and he was up late reviewing discovery (a trial tactic of his attorney).

**{¶66}** The state's memorandum in opposition to plea withdrawal explains why the evidence, including Appellant's statement to police, points to the conclusion that Appellant was the shooter. At the hearing, Appellant expressed, "* * * I hurt that guy. I didn't do it, Your Honor." Counsel advised Appellant not to take the plea, but Appellant took his mother's advice. He then had a change of heart. Counsel was found to have rendered competent performance. Providing some discovery to his client late (in order to avoid other inmates viewing the contents) was said to be a valid trial strategy.

**{¶67}** In addition, there was a prior plea offer asking Appellant to plead to the offenses as charged in the indictment with a related sentencing recommendation. *See* State's Memorandum in Opposition at 3; (April 28, 2014 Hrg. at 3). His counsel unsuccessfully sought a plea deal involving "flat" time. (April 28, 2014 Hrg. at 14); (June 17, 2014 Hrg. at 8). On the morning of trial, the state offered to reduce the aggravated murder charge to murder and to recommend 18 years to life. (Feb. 10, 2014 Plea Hrg. at 2-6). The court memorialized Appellant's rejection of this offer on the record and reviewed the offenses and sentences involved. After this was rejected, the state offered to amend the firearm specification from a three-year to a one-year specification and to recommend 16 years to life. It was within the trial court's province to discount Appellant's claim about his awareness of the nature of the tail on his sentence or which entity would be responsible for his potential release.

**{¶68}** A last-minute plea offer on the morning of trial is not a situation where counsel is expected to ask for a continuance. The offer belongs to the state, not the

court. Jury selection was delayed the morning of trial to accommodate consideration of the two plea offers provided that morning. After reviewing the transcript of the plea hearing, defense counsel voiced that he took no issue with the extent of the plea hearing. (June 17, 2014 Hrg. at 3). There is no dispute the trial court conducted a full hearing on the plea withdrawal motion. The court listened to the parties arguments on the various factors and discussed the application of the various factors at the hearing.

{¶69} Finally, while prejudice to the state is but one factor, I do not agree with the reviewing court's discounting of the state's claim of prejudice here. The assistant prosecutor noted she came to court with material witness warrants ready in case the witnesses, whom they took "great steps" to find for trial, did not appear. The state provided examples of four witnesses that were considered transient and/or no longer residing at their prior locations. At least one was an important witness to events contemporaneous with the shooting. The prosecutor explained prior issues with finding this witness. For instance, police were sent to his father's house four times, and his father told police he was living on the street in Cleveland. This witness called the prosecutor on the day of trial to report *he was on his way to court*. Relying on Appellant's plea, the prosecutor advised this witness he need not be present; she told this witness there had been a plea. I believe the trial court had the discretion to assign weight to the prosecutor's concerns.

{¶70} In reviewing the totality of the circumstances and the various factors, I cannot conclude the trial court's decision was unreasonable, unconscionable, or arbitrary. I therefore dissent.