[Cite as *State v. Patrick*, 2019-Ohio-1189.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KYLE PATRICK,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0091**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 12-CR-969

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Paul Gains*, Prosecuting Attorney, *Atty. Ralph Rivera*, Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee, and

*Atty. John Juhasz*, 7081 West Boulevard, Suite 4, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated:
March 29, 2019

**Donofrio, J.**

{¶1}    Defendant-appellant, Kyle Patrick, appeals his convictions and sentence in the Mahoning County Common Pleas Court for aggravated murder, aggravated robbery, tampering with evidence, and two firearm specifications following a jury trial.

{¶2}    Appellant was initially charged in the Mahoning County Juvenile Court as he was 17 years old at the time the events occurred. On August 24, 2012, the juvenile court transferred the matter to the general division. On September 27, 2013, appellant was indicted and charged with: aggravated murder in violation of R.C. 2903.01(B)(F), an unclassified felony; aggravated robbery in violation of R.C. 2911.01(A)(1)(C), a first-degree felony; tampering with evidence in violation of R.C. 2921.12(A)(1)(B), a third-degree felony; and two firearm specifications pursuant to R.C. 2941.145(A).

{¶3}    On February 10, 2014, the date of trial, appellant and plaintiff-appellee, the State of Ohio, engaged in last-minute plea negotiations. The state agreed to amend the aggravated murder charge to murder in violation of R.C. 2903.02(A)(D), an unclassified felony. Appellant pled guilty to the amended murder charge and the other charges. The trial court accepted appellant's guilty plea and scheduled a sentencing hearing for March 10, 2014.

{¶4}    On February 18, 2014, appellant filed a motion to withdraw his guilty plea. The trial court denied the motion and sentenced appellant to 16 years to life imprisonment.

{¶5}    On July 16, 2014, appellant appealed to this court asserting one assignment of error; the trial court abused its discretion in denying his motion to withdraw his guilty plea. On June 1, 2016, we issued our opinion and judgment entry on appellant's first appeal. We found merit with appellant's assignment of error, vacated his guilty plea, and remanded the matter for further proceedings. *State v. Patrick*, 7th Dist. No. 14 MA 93, 2016-Ohio-3283, ¶ 62.

{¶6}    On remand, the trial court scheduled a jury trial for April 24, 2017. Trial was held on all of the original charges, including aggravated murder. At trial, the state

called 15 witnesses and submitted numerous exhibits in its case-in-chief. The state's theory of the case was that appellant and two co-defendants planned to steal, using force, various items from Michael Abighanem. Appellant brought a gun with him for this purpose. During the planned robbery, appellant shot and killed Abighanem. Appellant then took the items from Abighanem and tried to clean Abighanem's blood off of them by using bleach.

{¶7} The jury convicted appellant on all counts. At sentencing, the trial court merged appellant's aggravated robbery conviction and its firearm specification with the aggravated murder conviction and its firearm specification. The trial court sentenced appellant to life imprisonment with parole possibility after 30 years for aggravated murder plus the mandatory three years of incarceration for the firearm specification. The trial court sentenced appellant to three years of incarceration for tampering with evidence. As the trial court did not make the statutory findings for consecutive sentences, appellant's total sentence was life imprisonment with parole possibility after 33 years. The trial court memorialized appellant's sentence in a judgment entry dated May 4, 2017. Appellant timely filed this appeal on May 15, 2017. Appellant now raises four assignments of error.

{¶8} Appellant's first assignment of error states:

IMPOSING A LIFE IMPRISONMENT SENTENCE UPON A JUVENILE OFFENDER WITHOUT TAKING INTO CONSIDERATION FACTORS COMMANDED BY U.S. CONST., AMEND. VIII AND XIV AND OHIO CONST., ART. I §9 VIOLATES THOSE PROVISIONS.

{¶9} Appellant argues that it was unconstitutional for the trial court to sentence him to life imprisonment with parole possibility after 33 years without taking into consideration that he was a juvenile at the time the offenses occurred.

{¶10} When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶ 1.

{¶11} Appellant's aggravated robbery sentence and its firearm specification merged with his aggravated murder sentence and its firearm specification. Appellant's firearm specification sentence is to be served consecutive to his aggravated murder

sentence. Finally, appellant's tampering with evidence sentence is to be served concurrently with his aggravated murder sentence.

**{¶12}** Aggravated murder is an unclassified felony. The possible prison sentences for aggravated murder are life imprisonment without parole or life imprisonment with parole eligibility after 20 years, 25 years, or 30 years. R.C. 2929.03(A)(1)(a)-(d). The trial court sentenced appellant to life imprisonment with parole possibility after 30 years on this count. Tampering with evidence is a third-degree felony. The possible prison sentences for a third-degree felony are 9, 12, 18, 24, 30, or 36 months. R.C. 2929.14(A)(3)(b). The trial court sentenced appellant to three years, or 36 months, on this count. The trial court also sentenced appellant to three years for the firearm specification, which is mandatory pursuant to R.C. 2941.145(A). Thus, each of appellant's sentences complied with the applicable statute.

**{¶13}** Appellant cites three cases from the U.S. Supreme Court in support of his argument. The first is *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In *Roper*, the Court held that the Eighth and Fourteenth Amendments barred the imposition of the death penalty to offenders who were under the age of 18 when the offenses were committed. *Id.* at 578-59. *Roper* is inapplicable because appellant was not sentenced to death.

**{¶14}** Appellant also cites *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). In *Graham*, the Court reaffirmed *Roper* holding that "because juveniles have lessened culpability they are less deserving of the most severe punishments." *Graham* at 68 citing *Roper*, 543 U.S. at 569. The *Graham* Court went on to hold that "[a] juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.'" *Id.* citing *Thompson*, 487 U.S. at 835. Appellant argues that these cases show that the age of juvenile defendants should be considered when they are sentenced, especially if the sentence is potentially life imprisonment.

**{¶15}** *Graham* specifically held that the Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit a homicide. *Graham* at 82. *Thompson* held that the imposition of the death penalty on a 16-year old

was unconstitutional. *Thompson* at 838. In this case, appellant was convicted of a homicide offense and was sentenced to life with parole possibility after 33 years. These facts make *Graham* and *Thompson* distinguishable to the extent that appellant can be paroled after 33 years.

**{¶16}** Pursuant to R.C. 2929.12, a trial court is not required to consider the age of a defendant when issuing a felony sentence. While R.C. 2929.12(C) and (E) provide that "any other relevant factors" should be considered, the statute itself does not mandate the sentencing court to consider the defendant's age.

**{¶17}** Appellant also argues that his sentence is disproportionate to the sentence of one of his co-defendants, Reginald Whitfield. Whitfield was sentenced to 13 years of incarceration after pleading guilty to involuntary manslaughter with a firearm specification and aggravated robbery. Whitfield's decision to plead guilty to the lesser offense of involuntary manslaughter explains the discrepancy between Whitfield's sentence and appellant's sentence. Moreover, arguments regarding proportionality and consistency of sentences must first be raised in the trial court. *State v. Williams*, 7th Dist. No. 11 MA 131, 2012-Ohio-6277, ¶ 77. Appellant did not raise a proportionality argument with the trial court during sentencing. Because appellant did not raise this argument with the trial court, this argument is waived.

**{¶18}** After a review of the record, appellant's sentence is not clearly and convincingly contrary to law.

**{¶19}** Accordingly, appellant's first assignment of error lacks merit and is overruled.

**{¶20}** Appellant's second assignment of error states:

THE FAILURE OF THE TRIAL COURT TO GIVE INSTRUCTIONS ON LESSER INCLUDED OFFENSES DENIED APPELLANT DUE PROCESS IN THE FULL EXPOSITION OF HIS RIGHT TO TRIAL BY JURY. (T.P. VOLL. III, P. 525).

**{¶21}** Appellant argues that the jury should have been given an instruction on a lesser-included offense to aggravated murder, specifically involuntary manslaughter.

**{¶22}** When reviewing a trial court's jury instructions, the proper standard of review of the trial court's refusal to give a requested jury instruction is whether such refusal constituted an abuse of discretion under the facts and circumstances of the case. *State v. Everson*, 7th Dist. No. 12 MA 128, 2016-Ohio-87, ¶ 58. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶23}** The Ohio Supreme Court has defined lesser-included offenses: "(i) [T]he offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987).

**{¶24}** The Ohio Supreme Court set forth the test for when the trial court is required to give the jury an instruction on a lesser-included offense: "[i]f the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-included offense, then a charge on the lesser-included offense is required." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 20 quoting *State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977). "Conversely, if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required, but is also improper." *Id.*

**{¶25}** At trial, after the state rested, appellant moved to have the jury instructed on the lesser-included offense of involuntary manslaughter. (Tr. 519). The trial court denied appellant's motion on the basis that "the jury could not * * * reasonably find against the state on the element of purposefulness" of aggravated murder. (Tr. 526).

**{¶26}** This court has previously held that involuntary manslaughter is a lesser-included offense of aggravated murder. *State v. Adams*, 7th Dist. No. 08 MA 246, 2011-Ohio-5361 ¶ 331 *rev'd on other grounds*, *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 429. Thus, we must move on to consider whether the trial court should have given an instruction on involuntary manslaughter in this case.

**{¶27}** The elements of aggravated murder are: "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." R.C. 2903.01(A). The elements of involuntary manslaughter are: "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A).

**{¶28}** The key distinction between these two offenses is the requisite level of intent. Therefore, in order for an instruction on involuntary manslaughter to be warranted in this case, the jury must have been able to reasonably find in favor of appellant and against the state on the element of purposefulness.

**{¶29}** Appellant argues that there was no evidence as to how exactly the shooting occurred because the witnesses who testified at trial were not in the room when the shooting occurred. Appellant argues that this is sufficient to show that the jury could have reasonably concluded that appellant was guilty of involuntary manslaughter and not aggravated murder.

**{¶30}** Mike Nakoneczny, Abighanem's best friend, testified at trial. Nakoneczny and Abighanem drove to Jujuan Jones's house on the west side of Youngstown so Abighanem could sell a laptop and a PlayStation. (Tr. 154). When they got to the house, Nakoneczny noticed two men outside who followed Abighanem into the house. (Tr. 156-157). When Nakoneczny entered the house, he noticed Abighanem turning on the PlayStation to show the two men it worked. (Tr. 157). Abighanem and the "taller guy" then went to the upstairs of the house to connect the PlayStation to a TV on the second floor. (Tr. 157-158). Nakoneczny did not go upstairs. (Tr. 158). As soon as Abighanem reached the top of the stairs, Nakoneczny heard a gunshot. (Tr. 158). Nakoneczny then heard another man yell "[g]et on the floor," Abighanem yelled "Mike," and a second gunshot was fired. (Tr. 158-159). Nakoneczny then ran from the house. (Tr. 159-160). Nakoneczny did not hear anything that indicated a scuffle, people pushing things around, or "any kind of tussling" from the upstairs. (Tr. 162).

**{¶31}** Aric Longcoy also testified at trial. Longcoy met appellant at appellant's house on the date at issue. (Tr. 318). Appellant told Longcoy that he planned to rob Abighanem. (Tr. 318). Longcoy was opposed to appellant robbing Abighanem and an argument between the two ensued. (Tr. 318-319). Longcoy walked with appellant and

Reginald Whitfield to Jujuan Jones' house trying to convince appellant not to rob Abighanem. (Tr. 319). When everyone arrived at Jones' house, appellant, Whitfield, and Jones put Longcoy in the basement to prevent him from warning anyone about the robbery. (Tr. 319). Appellant was the one who arranged the meeting with Abighanem by phone. (Tr. 320). Longcoy saw appellant with a "small black gun" at some point (Tr. 322-323).

**{¶32}** Longcoy managed to get out of the basement via a patio doorway. (Tr. 322). Shortly after Longcoy escaped the house, he heard a gunshot. (Tr. 321). Longcoy then returned to appellant's home in order to retrieve some items he left there. (Tr. 323). Appellant, Whitfield, and Jones were already at appellant's home by the time Longcoy arrived. (Tr. 324). Appellant's grandmother was also present but Longcoy was afraid to tell her about what happened. (Tr. 324). Appellant's grandmother offered to give Longcoy a ride somewhere. (Tr. 324). Longcoy asked to be dropped off at another person's house so appellant, Whitfield, and Jones would not follow him home. (Tr. 325). Appellant, Whitfield, and Jones also got in the car with appellant's grandmother. (Tr. 325). Appellant and Longcoy ended up at Chelsea Daviduk's house in Struthers, Ohio. (Tr. 326). At Daviduk's house, appellant told Longcoy that he and Abighanem "got into a struggle" and that appellant shot Abighanem. (Tr. 328-329).

**{¶33}** On cross-examination, Longcoy testified that he knew Abighanem would "fight back" on any attempt to be robbed. (Tr. 346). Longcoy also testified that appellant threatened to kill him if he tried to leave or tell anyone about their plan. (Tr. 346). Longcoy was not in the house when Abighanem was shot. (Tr. 348). Longcoy was at least 1,000 feet away from the house when he heard a gunshot. (Tr. 350).

**{¶34}** Daviduk also testified. She said that when appellant came to her house, he looked "pale" and had fresh clothes, "like he just took a shower." (Tr. 281). Appellant also mentioned that he had a "lick," a robbery, "somewhere in Campbell, east side of Campbell." (Tr. 281). Daviduk heard from Longcoy that appellant shot Abighanem. (Tr. 282). Daviduk noticed appellant cleaning blood off of various items in a backpack. (Tr. 285).

**{¶35}** Detective Sergeant Ronald Rodway, the lead investigator into Abighanem's death, also testified. Detective Rodway interviewed appellant as part of his investigation.

(Tr. 468). At first, appellant denied being at the home where Abighanem was killed. (Tr. 469). Appellant later admitted he was there. (Tr. 469). Appellant told Detective Rodway that he was in an upstairs closet when Whitfield and Abighanem came upstairs. (Tr. 470). Appellant told Detective Rodway that Whitfield was the one who pulled a gun on Abighanem. (Tr. 470). Appellant admitted to Detective Rodway he had a gun. (Tr. 471). Appellant admitted to having the backpack with the items in it at Daviduk's house and cleaning them off. (Tr. 474). Appellant also claimed that there were six or seven gunshots fired, which was inconsistent with the other interviews Detective Rodway conducted. (Tr. 481-482). Detective Rodway's investigation led him to believe that appellant knew there was going to be a robbery on the day at issue. (Tr. 495-496).

{¶36} Nakoneczny was the only witness to testify at trial who was in the house when the gunshots were fired. His testimony indicated that a gunshot was fired as soon as Abighanem reached the top of the stairs followed by a second gunshot shortly afterwards. His testimony also indicated that there was no struggle or fight once Abighanem reached the top of the stairs. Thus, his testimony demonstrated to the jury that appellant acted purposefully in shooting Abighanem. Because of Nakoneczny's testimony, the jury could not reasonably find against the state on the element of purposefulness of aggravated murder and find for appellant on the lack of purposefulness for involuntary manslaughter. Therefore, the lack of an involuntary manslaughter instruction was not an abuse of discretion.

{¶37} Accordingly, appellant's second assignment of error lacks merit and is overruled.

{¶38} Appellant's third assignment of error states:

> THE TRIAL COURT DENIED APPELLANT DUE PROCESS OF LAW, EQUAL PROTECTION AND BENEFIT OF THE LAWS, THE RIGHT TO JUSTICE WITHOUT DENIAL, AND THE PROHIBITION AGAINST MULTIPLE PUNISHMENTS WHEN IT SENTENCED APPELLANT TO MAXIMUM CONSECUTIVE TERMS TOTALING 30 YEARS TO LIFE, WHEN THERE WERE NO ADDITIONAL OR INTERVENING FACTS TO JUSTIFY THE DRASTIC SENTENCE ENHANCEMENT, THUS

TRIGGERING THE PRESUMPTION THAT THE RE-SENTENCING WAS VINDICTIVE.

**{¶39}** Appellant argues that the trial court issued a vindictive sentence at the conclusion of his trial. When appellant entered into the plea deal, the trial court sentenced him to 16 years to life. At the conclusion of appellant's trial, the trial court sentenced him to 33 years to life.

**{¶40}** Because this assignment of error challenges appellant's sentence, it is subject to same standard of review set forth in appellant's first assignment of error; the sentence will be upheld unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *Marcum*, 2016-Ohio-1002 at ¶ 1.

**{¶41}** Appellant argues that the trial court issued him a vindictive sentence because he exercised his right to have a trial after his successful appeal. "[P]enalizing those who choose to exercise constitutional rights [is] patently unconstitutional." *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) *quoting U.S. v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725. When a judge issues a defendant a harsher sentence after a new trial, the judge must affirmatively state the reasons for the harsher sentence. *Id.* at 726.

**{¶42}** The U.S. Supreme Court later limited the *Pearce* presumption of vindictiveness in *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In *Smith*, the Court held that the *Pearce* presumption does not apply when a defendant who receives one sentence after entering a guilty plea successfully appeals to withdraw that plea, then receives a harsher sentence after a trial. *Id.* at 802-803. The Court explained that a trial generally affords the trial court more relevant sentencing information than a guilty plea. *Id.* The Ohio Supreme Court adopted the *Smith* ruling limiting the *Pearce* presumption of vindictiveness. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431.

**{¶43}** Appellant cites two Ohio cases in support of his argument that the *Pearce* presumption of vindictiveness applies: *State v. Collins*, 8th Dist. Nos. 98575, 98595,

2013-Ohio-938, and *State v. Thrasher*, 178 Ohio App.3d 587, 2008-Ohio-5182, 899 N.E.2d 193 (2d Dist.). Both of these cases are distinguishable. In both cases, the appellants' original convictions and sentences were the result of trials, not guilty pleas. See *Collins* at ¶ 4; *Thrasher* at ¶ 2. In this case, appellant's original conviction and sentence prior to his first appeal were the result of a guilty plea.

**{¶44}** A similar issue to this case was addressed by this court in *State v. Adams*, 7th Dist. No. 13 MA 130, 2014-Ohio-5854. In *Adams*, Adams entered into an *Alford* plea to eight counts of rape. *Id.* at ¶ 2-3. Adams filed a pre-sentence motion to withdraw his plea which the trial court denied. *Id.* at ¶ 4. Adams was then sentenced to 15 years of incarceration. *Id.* This court reversed the trial court's ruling, vacated Adams' convictions, and remanded the matter for further proceedings. *Id.* at ¶ 5.

**{¶45}** On remand, Adams had a trial where he was found guilty on all eight counts of rape. *Id.* at ¶ 6. Adams was then sentenced to 80 years of incarceration. *Id.* Adams appealed again arguing, among other things, that his sentence was vindictive. *Id.* at ¶ 8. This court applied *Smith* and held that there was no presumption of vindictiveness and the burden rested on Adams to show actual vindictiveness. *Id.* at ¶ 16-18.

**{¶46}** Appellant does not point to anything in the record that indicates the trial court acted vindictively when it sentenced him after his trial. Appellant relies on the *Pearce* presumption, which is inapplicable because appellant's original conviction and sentence was the result of a guilty plea. Without any evidence of actual vindictiveness, we find no error with appellant's sentence.

**{¶47}** Accordingly, appellant's third assignment of error lacks merit and is overruled.

**{¶48}** Appellant's fourth assignment of error states:

> APPELLANT WAS DENIED DUE PROCESS WHEN THE STATE ADDUCED EVIDENCE THAT APPELLANT WAS A JUVENILE PROBATIONER, THUS UNDERCUTTING THE STATE'S OBLIGATION TO PROVE THE OFFENSES BEYOND A REASONABLE DOUBT WITH EVIDENCE ON THAT THE APPELLANT COMMITTED THE INDICTED OFFENSES, AND NOT WITH "OTHER ACT" EVIDENCE.

Case No. 17 MA 0091

**{¶49}** Appellant argues that the state should not have been permitted to elicit evidence at trial that indicated he had a delinquency record.

**{¶50}** There are three instances at trial where appellant argues the state elicited testimony that he had a delinquency record. The first is from Wes Skeels who testified at trial that he was the chief probation officer for the Mahoning County Juvenile Court at the time of the investigation into Abighanem's death. (Tr. 366). The second is from Detective Rodway where he testified that when he learned appellant was a juvenile, he contacted Skeels, "the chief probation officer at the time * * *." (Tr. 463). The third is also from Detective Rodway where he testified that a "probation search" of appellant's home was conducted. (Tr. 475). Appellant did not object to any of these statements.

**{¶51}** Failure to object to trial testimony waives all but a plain error review. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. An alleged error is plain error only if the error is "obvious," *Id.* citing *State v. Barnes*, 94 Ohio St.2d 21, 27, 759 N.E.2d 1240, (2002), and "but for the error, the outcome of the trial would have been otherwise." *Id.* citing *State v. Long*, 53 Ohio St.3d 91, 372 N.E.2d 804 (1978).

**{¶52}** Appellant argues that the admission of any reference to his "probation" violates this court's ruling in *State v. Anderson*, 7th Dist. No. 03MA252, 2006-Ohio-4618. In *Anderson*, this court held that the state may not introduce evidence for the primary purpose of generally identifying the defendant as a criminal. *Id.* at ¶ 63.

**{¶53}** But we also held in *Anderson* that "a parole officer may testify in the guilt phase of trial without violating Evid.R. 404(A) if the parole officer's status as a parole officer is inextricably linked to the state's presentation of its case." *Id.* at ¶ 73 citing *State v. Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298 (1999). We went on to hold that a probation officer testifying at trial may identify himself as a probation officer in order to make sense of his testimony. *Id.* at ¶ 75.

**{¶54}** Skeels testified that he contacted appellant's parents, the parents gave Skeels permission to search appellant's room, and two .22 caliber bullets were discovered in appellant's dresser. (Tr. 367-368). As for Detective Rodway, he first testified that he contacted "Wes [Skeels], who was the chief probation officer at the time," after learning that appellant was a juvenile. (Tr. 463). Detective Rodway then testified "later that

afternoon is when we found out about the probation search of the house where they found the bullets." (Tr. 475).

**{¶55}** The references to "probation" by Skeels and Detective Rodway do not violate *Anderson*. They were used to lay a foundation as to how appellant's room was searched during the investigation into Abighanem's death. Moreover, neither Skeels nor Detective Rodway testified as to what, if any, prior crimes appellant may have committed. For these reasons, we find no plain error.

*{¶56}* Additionally, appellant argues that his trial counsel's failure to object to the probation references constitutes ineffective assistance of counsel. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Sanders*, 94 Ohio St. 3d 150, 2002-Ohio-350, 761 N.E.2d 18 citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

**{¶57}** Because we find no plain error with the references to probation, trial counsel's representation did not fall below an objective standard of reasonableness. Therefore, appellant's trial counsel was not ineffective.

**{¶58}** Accordingly, appellant's fourth assignment of error lacks merit and is overruled.

**{¶59}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.
D'Apolito, J., concurs.

Case No. 17 MA 0091

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**