[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Patrick*, Slip Opinion No. 2020-Ohio-6803.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6803

THE STATE OF OHIO, APPELLEE, *v*. PATRICK, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Patrick*, Slip Opinion No. 2020-Ohio-6803.]

*Criminal law—R.C. 2953.08(D)(3) does not preclude an appellate court from reviewing a sentence imposed by a trial court for aggravated murder when a defendant raises a constitutional claim regarding that sentence on appeal—A trial court must separately consider the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03—Court of appeals' judgment reversed and cause remanded.*

(No. 2019-0655—Submitted July 8, 2020—Decided December 22, 2020.)

APPEAL from the Court of Appeals for Mahoning County,

No. 17 MA 0091, 2019-Ohio-1189.

_____

O'CONNOR, C.J.

{¶ 1} In this discretionary appeal, we consider whether R.C. 2953.08(D)(3) precludes an appellate court from reviewing a sentence imposed by a trial court for

aggravated murder when a defendant raises a constitutional claim regarding that sentence on appeal. We hold that R.C. 2953.08(D)(3) does not preclude an appellate court from doing so.

{¶ 2} Because we conclude that the statute does not preclude an appeal of a sentence on constitutional grounds, we must also determine whether a trial court's imposition of a life-imprisonment sentence with parole eligibility upon a juvenile offender, without consideration of the offender's youth as a mitigating factor, violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution. We hold that, consistent with our decision in *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, a trial court must separately consider the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole.

## I. RELEVANT BACKGROUND

{¶ 3} Appellant, Kyle Patrick, was charged in the Mahoning County Juvenile Court with offenses stemming from the fatal shooting of Michael Abinghanem that occurred in April 2012, when Patrick was 17 years old. The facts of Patrick's offenses are not relevant for the purposes of resolving this appeal but are set forth in the decision of the Seventh District Court of Appeals below, 2019-Ohio-1189, ¶ 6, 29-36.

{¶ 4} Patrick was bound over to be tried as an adult in the Mahoning County Court of Common Pleas. He was indicted on one count of aggravated murder in violation of R.C. 2903.01(B), one count of aggravated robbery in violation of R.C. 2911.01(A)(1), one count of tampering with evidence in violation of R.C. 2921.12(A)(1), and two firearm specifications pursuant to R.C. 2941.145(A). On February 10, 2014, Patrick pleaded guilty to one count of murder with a one-year firearm specification, one count of aggravated robbery with a one-year firearm specification, and tampering with evidence.

{¶ 5} Prior to sentencing, Patrick moved to withdraw his guilty plea. The trial court denied the motion and on June 19, 2014, the court sentenced Patrick to an aggregate sentence of life imprisonment with parole eligibility after 16 years. His sentence consisted of life imprisonment with parole eligibility after 15 years for the murder offense, to be served consecutively to the 1-year prison sentence for the firearm specifications, and 11 years in prison for the aggravated-robbery offense and 3 years in prison for the tampering-with-evidence offense, to be served concurrently with the other sentences.

{¶ 6} Patrick appealed the trial court's judgment denying his motion to withdraw his guilty plea to the Seventh District, which reversed the trial court's judgment and remanded the matter for further proceedings. *State v. Patrick*, 2016-Ohio-3283, 66 N.E.3d 169 (7th Dist.). Following a jury trial on the original charges, the jury found Patrick guilty on all counts: aggravated murder, aggravated robbery, tampering with evidence, and the firearm specifications.

{¶ 7} The trial court merged the aggravated-robbery conviction and its accompanying firearm specification with the aggravated-murder conviction and its accompanying firearm specification. The trial court then sentenced Patrick to life imprisonment with parole eligibility after 30 years for the aggravated-murder offense, plus a consecutive, mandatory 3-year prison term for the firearm specification. The court also sentenced Patrick to 3 years in prison for the tampering-with-evidence offense, to run concurrently with the other sentences. Thus, the trial court ordered Patrick to serve life in prison with parole eligibility after 33 years. The court stated in its sentencing entry that it had "considered the record, oral statements, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and ha[d] balanced the seriousness and recidivism factors of Ohio Revised Code Section 2929.12."

{¶ 8} On appeal to the Seventh District, Patrick argued that the trial court had failed to consider his youth when it imposed a life sentence and therefore his

sentence violated the Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 of the Ohio Constitution. The court of appeals rejected this argument, concluding that Patrick's sentence was distinguishable from those at issue in decisions of the United States Supreme Court considering Eighth Amendment challenges by juvenile offenders, because Patrick would be eligible for parole after 33 years. 2019-Ohio-1189 at ¶ 15. The Seventh District also concluded, "Pursuant to R.C. 2929.12, a trial court is not required to consider the age of a defendant when issuing a felony sentence. While R.C. 2929.12(C) and (E) provide that 'any other relevant factors' should be considered, the statute itself does not mandate the sentencing court to consider the defendant's age." *Id.* at ¶ 16. As a result, the Seventh District affirmed the trial court's judgment. *Id.* at ¶ 13, 15-19.

{¶ 9} This court accepted discretionary review of Patrick's first proposition of law:

Imposition of any life imprisonment sentence upon a juvenile offender without taking into consideration factors commanded by the Eighth and Fourteenth amendments to the United States Constitution and Article I, Section 10 of the Constitution of Ohio violates those provisions.

*See* 156 Ohio St.3d 1463, 2019-Ohio-2892, 126 N.E.3d 1167.

{¶ 10} This court held oral argument on April 28, 2020. On May 1, 2020, we sua sponte ordered supplemental briefing on the following issues: "The effect, if any, of R.C. 2953.08(D)(3) on this court's and the court of appeals' ability to review appellant's sentence. The parties should address whether that provision denies either court subject-matter jurisdiction and, if not, whether it otherwise limits the scope of the appeal here or in the court of appeals." 158 Ohio St.3d 1494, 2020-Ohio-2746, 144 N.E.3d 428.

4

## II. ANALYSIS

{¶ 11} We first address the subject of our supplemental-briefing order. Because we conclude that Patrick's constitutional challenge to his sentence is not barred by R.C. 2953.08(D)(3), we then address the issue raised in Patrick's proposition of law.

### A. R.C. 2953.08(D)(3) does not preclude an appellate court from considering the constitutionality of an aggravated-murder sentence imposed on a juvenile offender tried as an adult

{¶ 12} R.C. 2953.08 was enacted in 1996 as part of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, and its companion legislation, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part VI, 10752 (collectively referred to as "S.B. 2"). R.C. 2953.08(A) states, "In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant * * *." R.C. 2953.08(D)(3), however, states that "a sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." Patrick was sentenced pursuant to R.C. 2929.03.

{¶ 13} Patrick argues that R.C. 2953.08 created a new right to appeal a felony sentence in addition to any other right to appeal. He argues that the statutory preclusion against review of aggravated-murder sentences contained in R.C. 2953.08(D)(3) does not apply to his appeal, because he did not invoke appellate jurisdiction under R.C. 2953.08. In fact, Patrick concedes that if an appellant seeks review of an aggravated-murder sentence under R.C. 2953.08, the appellate court would be precluded from conducting that review by R.C. 2953.08(D)(3). But Patrick distinguishes his appeal as a constitutional challenge to the sentencing process and, he argues, this court can review such challenges under R.C. 2505.03 and 2953.02. Finally, Patrick argues that if we accept the state's argument that R.C.

2953.08(D)(3) precludes *any* appellate review of aggravated-murder sentences, then the provision is unconstitutional.

{¶ 14} The state argues that R.C. 2953.08 is the exclusive route to appeal a felony sentence, unless a more specific statute applies. It argues that no more specific statute provides a basis for Patrick to appeal his aggravated-murder sentence and that neither R.C. 2505.03 nor R.C. 2953.02 applies to Patrick's appeal.

*1. R.C. 2953.08 is not the exclusive basis for appealing a sentence*

{¶ 15} It is clear from the language in R.C. 2953.08 that the statute does not establish the *only* basis by which a party may appeal a sentence. R.C. 2953.08(A) begins by stating, "*In addition to any other right to appeal * * *,* a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds * * *." (Emphasis added.) The language "[in] addition to any other right to appeal" appears again in R.C. 2953.08(B) regarding appeals by the prosecution. Also, R.C. 2953.08(E) states, "A sentence appeal *under this section* shall be consolidated *with any other appeal in the case.* If no other appeal is filed, the court of appeals may review only the portions of the trial record that pertain to sentencing." (Emphasis added.) These provisions referring to other methods of appeal make clear that R.C. 2953.08 does not prescribe the sole right to appeal a criminal sentence.

{¶ 16} Indeed, R.C. 2953.02 also provides a right to appeal a judgment or final order to the court of appeals "[i]n a capital case in which a sentence of death is imposed for an offense committed before January 1, 1995, *and in any other criminal case * * *.*" (Emphasis added.) R.C. 2953.02 also provides, "A judgment or final order of the court of appeals involving a question arising under the Constitution of the United States or of this state may be appealed to the supreme court as a matter of right." The final judgment for purposes of appeal under R.C. 2953.02 is the sentence. *See, e.g., State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, ¶ 6 ("Generally, in a criminal case, the final judgment

is the sentence"); *Columbus v. Taylor*, 39 Ohio St.3d 162, 165, 529 N.E.2d 1382 (1988) (the final judgment in a criminal case is the sentence and the sentence is the judgment); *State v. Hunt*, 47 Ohio St.2d 170, 174, 351 N.E.2d 106 (1976) ("Generally, the sentence in a criminal case is the judgment"); *State v. Chamberlain*, 177 Ohio St. 104, 106, 202 N.E.2d 695 (1964) (same); *State v. Thomas*, 175 Ohio St. 563, 564, 197 N.E.2d 197 (1964) ("the sentence is the judgment from which an appeal lies"); *see also Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment"). Thus, R.C. 2953.02 also provides a statutory right to appeal a criminal sentence.

{¶ 17} Moreover, the preclusive language in R.C. 2953.08(D)(3) demonstrates that its scope is limited to the bases of appeal described in R.C. 2953.08. It states that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review *under this section*." (Emphasis added.) *Id.* In other words, R.C. 2953.08(D)(3) does not determine whether a sentence imposed for aggravated murder is subject to review under any other statutory provision. In that way, R.C. 2953.08(D)(3)'s statutory language makes clear that it does not preclude other potential avenues of appellate review. Thus, contrary to the state's argument, there is no indication in the language of R.C. 2953.02 and 2953.08 that the rights to appeal described in the statutes conflict with each other.

{¶ 18} In order to determine whether R.C. 2953.08(D)(3) precludes Patrick's appeal, we must look to the scope of the right to appeal provided in R.C. 2953.08 to see if Patrick's appeal—a constitutional challenge—is permitted under that statute.

*2. R.C. 2953.08(D)(3) does not preclude an appellate court's review of a*

*constitutional challenge to a sentence for aggravated murder or murder*

{¶ 19} In his appeal to the Seventh District, Patrick challenged the constitutionality of his sentence under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution. That is also the basis of the proposition of law that this court accepted for discretionary review. Thus, it is clear that Patrick has raised a constitutional challenge to his aggravated-murder sentence.

{¶ 20} Next, we look to the bases of appeal described in R.C. 2953.08 to determine if they permit a constitutional challenge to a felony sentence. R.C. 2953.08(A)(1) and (5) describe the grounds for appeal if certain sentences are imposed pursuant to R.C. 2929.14 or 2929.142. R.C. 2953.08(A)(2) applies to sentences including a prison term imposed for a fourth- or fifth-degree felony or a felony drug offense that could be subject to only a community-control sanction under R.C. 2929.13(B). R.C. 2953.08(A)(3) applies to sentences imposed pursuant to R.C. 2971.03. R.C. 2953.08(C) applies to consecutive sentences imposed under R.C. 2929.14(C)(3) and certain additional sentences imposed under R.C. 2929.14.

{¶ 21} Patrick was sentenced under R.C. 2929.03, so none of the above-mentioned provisions describe a basis for an appeal of his sentence. And, of course, none describe a constitutional challenge to a sentence.

{¶ 22} R.C. 2953.08(A)(4) provides that a defendant may appeal a felony sentence on the basis that the sentence "is contrary to law." The term "contrary to law appeared in R.C. 2953.08(A)(4) when R.C. 2953.08 was enacted through S.B. 2 in 1996. By that time, "contrary to law" had been defined as "in violation of statute or legal regulations at a given time." *See, e.g.*, *Black's Law Dictionary* 328 (6th Ed.1990). Also, we "consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage." *State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918

N.E.2d 135, ¶ 25. All the other bases of appeal described in R.C. 2953.08(A) relate to whether the trial court followed statutory sentencing requirements. Reading R.C. 2953.08(A)(4) in that context, it follows that the "contrary to law" basis of appeal is of a similar nature. Thus, we conclude that R.C. 2953.08(A)(4) does not describe an appeal taken on constitutional grounds and that such an appeal is not an appeal "under this section," as described in R.C. 2953.08(D)(3). Accordingly, R.C. 2953.08(D)(3) does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds.

{¶ 23} We now proceed to the merits of Patrick's appeal.

**B. A trial court must articulate its consideration of the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole**

{¶ 24} Patrick argues that based on the significant body of caselaw explaining the differences between juveniles and adults for sentencing purposes, "there is nothing constitutionally distinguishable about this case that warrants a court in failing to account for youth as a mitigating factor in its sentencing decision."

{¶ 25} The state argues that a trial court is required to consider a juvenile offender's youth and to articulate that consideration in its sentencing decision only before imposing life imprisonment *without the possibility of parole*. The state also argues that when an offender is afforded the possibility of parole, the concerns about a juvenile offender's culpability and the possibility of rehabilitation addressed by this court in *Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, do not exist. Finally, the state argues that a sentencing court need not explicitly articulate its consideration of the offender's youth on the record and that an appellate court may presume it was considered.

*1. Age is a relevant sentencing factor under R.C. 2929.12 when a trial court sentences an offender who was a juvenile when he or she committed the offense*

{¶ 26} At the outset, we must address the Seventh District's conclusion below that "[p]ursuant to R.C. 2929.12, a trial court is not required to consider the age of a defendant when issuing a felony sentence. While R.C. 2929.12(C) and (E) provide that 'any other relevant factors' should be considered, the statute itself does not mandate the sentencing court to consider the defendant's age." 2019-Ohio-1189 at ¶ 16.

{¶ 27} The United States Supreme Court "has repeatedly noted to us that minors are less mature and responsible than adults, that they are lacking in experience, perspective, and judgment, and that they are more vulnerable and susceptible to the pressures of peers than are adults." *Long* at ¶ 33 (O'Connor, C.J., concurring), citing *J.D.B. v. North Carolina*, 564 U.S. 261, 273-276, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011). And in *Long*, we expressly held that "youth is a mitigating factor for a court to consider when sentencing a juvenile." *Id*. at ¶ 19. The fact that these statements about youth and its attendant characteristics were made in cases addressing constitutional questions does not mean those characteristics are present *only* in such cases. They are characteristics inherent to juveniles in all cases. *See Miller v. Alabama*, 567 U.S. 460, 473, 132 S.Ct 2455, 183 L.Ed.2d 407 (2012) ("[N]one of what [*Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)] said about children—about their distinctive and (transitory) mental traits and environmental vulnerabilities—is crime specific. Those features are evident in the same way, and to the same degree, when * * * a botched robbery turns into a killing"). Thus, contrary to the Seventh District's conclusion, age is undoubtedly a relevant factor that should be considered when a trial court sentences an offender who was a juvenile when he or she committed the offense, and therefore, youth is a relevant sentencing consideration under R.C. 2929.12(C) and (E).

10

{¶ 28} Of course, consideration of an offender's youth and its attendant characteristics does not demand a certain result. *See Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, at ¶ 37 (O'Connor, C.J., concurring) ("I caution that our law requires only that youth be considered as a factor. It does not mandate any particular result from that consideration"). And the scope of a trial court's consideration of youth must depend on the constitutional concerns present. "The constitutional question, then, is how much to consider an offender's youth, and how much to consider his crime." *Id.* at ¶ 35 (O'Connor, C.J., concurring).

*2. A sentence of life imprisonment with parole eligibility triggers the same scope of Eighth Amendment concern and need for consideration of youth during sentencing that we recognized in* Long

{¶ 29} Here, we are asked to determine whether a sentence of life in prison with parole eligibility after 33 years imposed on a juvenile offender triggers the same scope of Eighth Amendment concern and sentencing consideration that we recognized in *Long*. We conclude that it does.

{¶ 30} In *Long*, we held that consistent with the United States Supreme Court's decision in *Miller*, 567 U.S. at 473, 132 S.Ct 2455, 183 L.Ed.2d 407, "[a] court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole." *Long* at paragraph one of the syllabus. We also held that "[t]he record must reflect that the court specifically considered the juvenile offender's youth as a mitigating factor at sentencing when a prison term of life without parole is imposed." *Id.* at paragraph two of the syllabus.

{¶ 31} We recognize that, unlike the defendant in *Long*, Patrick was not sentenced to life imprisonment without the possibility of parole. But under R.C. 2929.03(A)(1), the relevant sentencing statute in both this case and *Long*, life without parole was a potential sentence for Patrick. The trial court's discretionary-sentencing task required it to choose from a number of life-sentencing options, with

or without parole. In that way, the court's individualized sentencing consideration here differed little from the sentencing court's individualized sentencing consideration in *Long*.

{¶ 32} R.C. 2929.03(A)(1) gives a sentencing court a range of life-term options: life without parole, life with parole eligibility after serving 20 years in prison, life with parole eligibility after serving 25 years in prison, and life with parole eligibility after serving 30 years in prison. Even when the state recommends against a sentence of life without parole, as it did here, that sentence remains an option under the trial court's discretion. If, as *Miller* instructs, youth and its attendant characteristics must be considered when a court imposes its harshest penalties, *see Miller* at 477-478, then youth is also a necessary consideration when a sentencing court determines at what point parole eligibility should be available during a life sentence.

{¶ 33} Additionally, we conclude that the difference between a sentence of life in prison with parole eligibility after a term of years and a sentence of life without the possibility of parole is not material for purposes of an Eighth Amendment challenge by an offender who was a juvenile when he or she committed the offense. The state and the Seventh District have failed to recognize that spending one's life in prison is a real possibility under all the life-sentencing options in R.C. 2929.03(A)(1). Parole eligibility does not guarantee a defendant's release from prison. As noted in the brief of amici curiae Office of the Ohio Public Defender et al., Ohio's parole-release rate was only 10.2 percent between 2011 and 2018. Bischoff, *Ohio Parole Board Under Fire from Victims, Inmates, and Lawmakers*, Dayton Daily News (Apr. 7, 2019), available at https://www.daytondailynews.com/news/state—regional-govt—politics/ohio-parole-board-under-fire-from-victims-inmates-and-lawmakers/v3iPhe6kmV9w Tm8SOxCpzO/ (accessed Nov. 25, 2020) [https://perma.cc/E4P3-HZRY]. In this

way, Patrick's sentence varies little from the state's harshest punishment for a juvenile offender who is tried as an adult.

{¶ 34} We also note a relevant distinction between Patrick's sentence and the sentence at issue in *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127. That case involved a juvenile who committed nonhomicide offenses and received a 112-year aggregate prison sentence. *Id.* at ¶ 12-13, 16. This court considered the impact of the Supreme Court's categorical prohibition on the imposition of life-without-parole sentences on juveniles for nonhomicide offenses announced in *Graham*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, and concluded that Moore's sentence was unconstitutional because he would not be eligible for judicial release until he was 92 years old. *Moore* at ¶ 30, 64.

{¶ 35} To be sure, Patrick was sentenced to *life* in prison with parole eligibility after 33 years. Any suggestion that Patrick's eligibility for parole in his 50s gives him a "meaningful opportunity to obtain release," *Moore* at ¶ 47, is misplaced. Parole eligibility for the first time in one's 50s while under a life sentence should not be confused with the opportunity for *judicial* release, which is what was at issue in *Moore*, *id.* at ¶ 52.

{¶ 36} A decision whether to grant or deny parole lies with the parole board, which is a part of the executive branch of our government. It is the judiciary, however, that is primarily charged with safeguarding the constitutional guarantees of the Eighth Amendment to the United States Constitution. For that reason, we should not lightly draw distinctions among life sentences for purposes of determining whether a life sentence violates constitutional protections. And it is contrary to this court's juvenile-sentencing decisions to suggest that there is no constitutional remedy when a sentencing court fails to consider a juvenile offender's youth when imposing a life sentence. Therefore, we conclude that the severity of a sentence of life in prison on a juvenile offender, even if parole eligibility is part of the life sentence, is analogous to a sentence of life in prison

without the possibility of parole for the purposes of the Eighth Amendment. Accordingly, such a sentence should be treated consistently with that imposed in *Long*, as instructed by *Miller*. Given the high likelihood of the juvenile offender spending his or her life in prison, the need for an individualized sentencing decision that considers the offender's youth and its attendant characteristics is critical when life without parole is a potential sentence.

{¶ 37} We also note that the state argues for a sort of categorical exception that a sentencing court's consideration of youth is *not* required under the Eighth Amendment *unless* a life-without-parole sentence is actually imposed on a juvenile offender. But the decisions in *Miller* and *Long* do not absolve sentencing courts from considering a defendant's youth during sentencing simply because parole eligibility is ultimately included in the sentence. It is *because* a court must consider youth and its attendant characteristics in its individualized sentencing decision that the court *may* impose a sentence of life without the possibility of parole for a homicide offense committed when the offender was a juvenile. *See Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, at ¶ 19 (explaining that consideration of youth as a mitigating factor "does not mean that a juvenile may be sentenced only to the minimum term. The offender's youth at the time of the offense must still be weighed against any statutory consideration that might make an offense more serious or an offender more likely to recidivate"); *Miller*, 567 U.S. at 480, 132 S.Ct 2455, 183 L.Ed.2d 407 ("Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison").

{¶ 38} Additionally, under Ohio's statutory sentencing scheme, the sentence ultimately imposed by a trial court does not determine what factors it must consider under R.C. 2929.12. The factors in R.C. 2929.12 must be considered *in*

*order to* determine the proper sentence—and here the youth of the offender and youth's attendant characteristics are relevant.

**{¶ 39}** We know that a sentence of life without the possibility of parole "forswears altogether the rehabilitative ideal." *Graham*, 560 U.S. at 74, 130 S.Ct. 2011, 176 L.Ed.2d 825. We also know that the characteristics of youth include diminished culpability and heightened capacity for change. This brings to mind an illustration.

**{¶ 40}** In the movie *The Shawshank Redemption*, the character "Red," portrayed by Morgan Freeman, faces the parole board after having served 40 years of a life sentence and having been previously denied parole twice after serving 20 and 30 years of his sentence. In response to a member of the parole board's question about whether he has been rehabilitated, he responds: "Rehabilitated? Well, now, let me see. * * * What do you really want to know? Am I sorry for what I did?" Then, he explains:

> There's not a day goes by I don't feel regret. Not because I'm in here, or because you think I should. I look back on the way I was then, a young, stupid kid who committed that terrible crime. I want to talk to him. I want to try to talk some sense to him, tell him the way things are, but I can't. That kid's long gone, and this old man is all that's left. I got to live with that.

*The Shawshank Redemption* (Castle Rock Entertainment 1994).

**{¶ 41}** Certainly, before imposing a life sentence on a juvenile offender, there is room in our justice system for a trial court to make an individualized sentencing determination that articulates its consideration of the offender's youth, and all that comes with it, before an old man is all that is left.

*3. The record in this case does not demonstrate that the trial court considered*
*Patrick's youth as a mitigating factor*

{¶ 42} As we stated in *Long*, *Miller* mandates that "a trial court *consider as mitigating* the offender's youth and its attendant characteristics before imposing a sentence of life without parole" (emphasis sic), *Long* at ¶ 27, and the "record must reflect that the court specifically considered the juvenile offender's youth as a mitigating factor at sentencing when a prison term of life without parole is imposed," *id.* at paragraph two of the syllabus. Because we extend our application in *Long* to Patrick's sentence, we must determine whether the sentencing record here reflects that the trial court specifically considered his youth as a mitigating factor. We conclude that the sentencing court failed to articulate on the record whether, and how, it considered Patrick's youth in sentencing.

{¶ 43} At the sentencing hearing, Patrick's youth was addressed by the state and Patrick's counsel. The prosecutor said, "I'm not going to recommend life without parole on the aggravated murder because the Court of Appeals and the Supreme Court have said that we should give them—juveniles—some chance at having a life somewhere out there." The state therefore recommended a sentence on the aggravated-murder offense of life imprisonment with parole eligibility after 30 years.

{¶ 44} Patrick's counsel also made a statement that referred to Patrick's youth in regard to sentencing:

> [J]udge, if ever there was a case that was appropriate for mercy, I
> think this is it. We're talking about a young man who at the time of
> this offense was 17 years old. Certainly that should be taken into
> consideration when we sentence.
>      * * *

* * * [T]he idea of a murder was not really contemplated inside the brain of Kyle Patrick that day. There was certainly some reckless behavior and foolish behavior, and it was in fact intended to be a robbery, and then ill-prepared group to commit this robbery which then gave rise to the shooting death.

For what it's worth, Judge, today Kyle Patrick denies that he was the shooter. So he does acknowledge the idea of a robbery. He does acknowledge that it was his weapon. Certainly acknowledges, and he did from the beginning, that he tried to clean up the situation when he went back, got the bag with whatever it was.

We had a deal worked out years ago in this case which I thought was appropriate under the circumstances. However, I could not convince Kyle, I could not explain to him—I wish I could do a better job in my job, in my work—the idea of the felony murder or the accomplice liability. Because he was adamant that he did not shoot Big Mike, because he was adamant that he did not mean to shoot Big Mike, he had a very difficult time understanding how our system of justice could convict him of the murder of Big Mike under the circumstances. So our deal that we had prior to trial I thought was appropriate. And I think that, Judge, on the issue as far as how you want to start this sentence, I do think that this is a case that would be appropriate for mercy for a chance for life.

{¶ 45} Patrick's mother said the following at the sentencing hearing regarding Patrick's youth:

Kyle wasn't the ringleader. He's not a street kid with no family or no home and bouncing from place to place. When this

began, he was a sheltered 17-year-old boy. He was a wannabe gangster who thought * * * hanging around these 20-year-old street thugs would make him cool, and he made a bad decision. I'm not saying he shouldn't be punished. I'm sorry.

* * *

Kyle isn't a monster. He's a human being capable of remorse. He smiles when he's anxious and nervous. He wears his heart on his sleeve. He's too trusting of the wrong people, and he's loyal to a fault. He wasn't the ringleader. Those boys came back to my house because I thought in a controlled environment we could monitor the situation. There was always someone home.

* * *

Kyle was never a leader. He was a follower of the wrong people, and he's my son, and he's a grandson, and he's a brother, and he's a nephew, and no matter how strong we are as a family, we are going to get through this.

{¶ 46} After hearing these statements, the trial court made no mention of how its consideration of Patrick's youth factored into its decision to impose the second harshest penalty available for the aggravated-murder offense and accompanying firearm specification—life with parole eligibility after 33 years—even though parole eligibility after 23 or 28 years was also a possible sentence for aggravated murder with a firearm specification, R.C. 2929.03(A)(1). In announcing its sentence, the trial court stated:

I was trying to think in all of the years that I have done this if there has ever been a case that to me seemed as senseless as this

one. And we've had, of course, our share, but I can't think of many. To me this is a senseless loss of life.

&ast; &ast; &ast;

Actually this is an easy call for me given what I know from the evidence introduced at trial and given the verdict of the jury.

Considering the factors contained in section 2929 of the revised code, of course you are not eligible for community control. It's going to be the sentence of this court that you * * * serve a sentence of life imprisonment with parole eligibility after serving 30 full years. As to the firearm specification, a definite sentence of three years that must be served prior to and consecutive to the sentence imposed in Count One. I agree that Count Two and the specification merges with Count One. I'm going to impose a definite sentence of three years on Count Three.

{¶ 47} We note that at Patrick's first sentencing hearing, after he had pleaded guilty and before he appealed the trial court's denial of his motion to withdraw that plea, the trial court sentenced him to life in prison with parole eligibility *after 16 years*. At Patrick's subsequent sentencing hearing, after hearing statements about Patrick's youth from the prosecution, Patrick's counsel, and Patrick's mother, the trial court imposed a more severe sentence than it had previously imposed. Thus, it is unclear from the record whether, and if so, how, the trial court considered Patrick's youth.

{¶ 48} It is not enough to assume that the trial court must have considered Patrick's youth in determining the sentence because the prosecution and defense counsel addressed his youth in their statements to the court during the sentencing hearing. The same thing occurred in *Long* and we held otherwise. *See Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, at ¶ 20-28. The fact that the

prosecution here—unlike the prosecution in *Long*—properly asserted that youth should be a mitigating factor also does not materially distinguish the sentencing record in this case. Here, as in *Long*, it cannot be determined from the record whether, and if so, how, the trial court considered Patrick's youth because the trial court failed to articulate any such consideration in the sentencing record.

### III.  CONCLUSION

{¶ 49} For the foregoing reasons, we reverse the judgment of the Seventh District Court of Appeals and remand the cause to the trial court for resentencing.

Judgment reversed

and cause remanded.

FRENCH and STEWART, JJ., concur.

DONNELLY, J., concurs, with an opinion.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

FISCHER, J., concurs in part II(A) and dissents from parts II(B) and III.

_____

**DONNELLY, J., concurring.**

{¶ 50} I agree with the conclusion of the majority in Part II(A) of its opinion that R.C. 2953.08(D)(3) does not preclude an appellate court from considering the constitutionality of an aggravated-murder sentence imposed upon a juvenile offender tried as an adult. I write separately because I arrive at that same conclusion by somewhat different means and because I disagree with some of the analysis applied by the majority to reach its conclusion.

{¶ 51} I further agree with the majority that a trial court must articulate its consideration of the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole, and I accordingly join in full Part II(B) of the majority opinion.

{¶ 52} I therefore concur in the court's judgment.

**R.C. 2953.08(D)(3) does not foreclose appellate review of an aggravated-murder sentence**

{¶ 53} I agree with the majority that R.C. 2953.08(D)(3) does not preclude an appellate court from considering the constitutionality of a noncapital aggravated-murder or murder sentence. For the reasons that I will explain, I question whether R.C. 2953.08(D)(3) was truly intended to bar any appellate review of a noncapital aggravated-murder sentence. Taking the text of R.C. 2953.08(D)(3) at face value, I agree with the majority that R.C. 2953.08 does not extinguish other statutory rights of appeal which, in my view, include but are not necessarily limited to appeals challenging the constitutionality of a noncapital aggravated-murder sentence.

{¶ 54} R.C. 2953.08(D)(3) was first enacted as a part of the 1996 criminal-sentencing reforms, Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, and its companion legislation, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part VI, 10752 (collectively, "S.B. 2"). Before S.B. 2 was enacted, Ohio law accorded trial courts broad discretion in imposing a criminal sentence and appellate courts generally would not review a sentence that was authorized by law and within the applicable statutory limits. *See State v. Hill*, 70 Ohio St.3d 25, 29, 635 N.E.2d 1248 (1994); *Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), paragraph one of the syllabus. A sentence so imposed would not be disturbed on appeal absent an abuse of discretion. *See State v. Grigsby*, 80 Ohio App.3d 291, 302, 609 N.E.2d 183 (8th Dist.1992); *State v. Cassidy*, 21 Ohio App.3d 100, 102, 487 N.E.2d 322 (9th Dist.1984); *State v. Longo*, 4 Ohio App.3d 136, 141, 446 N.E.2d 1145 (8th Dist.1982).

{¶ 55} After the passage of S.B. 2, "R.C. 2953.08 specifically and comprehensively defines the parameters and standards—including the standard of review—for felony-sentencing appeals." *State v. Marcum*, 146 Ohio St.3d 516,

2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21.  And although R.C. 2953.08(D)(3) states that "a sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section," a review of the statutory history and a close examination of the statutory text confirms for me that R.C. 2953.08(D)(3) does not foreclose appellate review of Patrick's sentence.

*It is unclear whether R.C. 2953.08(D)(3) was intended to bar appellate review of a noncapital aggravated-murder sentence*

{¶ 56} When R.C. 2953.08(D)(3) became law on July 1, 1996, it was codified with R.C. 2953.08(D)(1).  *See* S.B. 2, 146 Ohio Laws, Part IV, 7564.  At that time, there was only one possible sentence for a noncapital-aggravated-murder conviction: life imprisonment with parole eligibility after serving 20 years.  *See* former R.C. 2929.03(A), S.B. 2, 146 Ohio Laws, Part IV, 7453-7454.  Because there was only one possible sentence for such a conviction, the apparent bar to appellate review of such a sentence under R.C. 2953.08(D) made logical sense.

{¶ 57} Effective March 23, 2005, however, additional sentences for a noncapital aggravated-murder conviction were added in Sub.H.B. No. 184, 150 Ohio Laws, Part III, 5043 ("H.B. 184").  As amended, R.C. 2929.03 allows a trial court to impose one of four sentences once a defendant is convicted of noncapital aggravated murder: life imprisonment without parole, R.C. 2929.03(A)(1)(a); life imprisonment with parole eligibility after 20 years of imprisonment, R.C. 2929.03(A)(1)(b); life imprisonment with parole eligibility after 25 years of imprisonment, R.C. 2929.03(A)(1)(c); or life imprisonment with parole eligibility after 30 years of imprisonment, R.C. 2929.03(A)(1)(d).

{¶ 58} "The legislative history plainly shows that the General Assembly's intent in enacting the current version of R.C. 2929.03(A) was to ensure that trial-court judges had discretion to choose among the four options listed above when sentencing those convicted of aggravated murder." *State v. Phillips*, 3d Dist. No.

15-12-02, 2012-Ohio-5950, ¶ 16. Despite having given trial courts discretion to select from a range of possible sentences under R.C. 2929.03, the General Assembly made no change to the terms of R.C. 2953.08(D). *See State v. Smith*, 1st Dist. No. C-180227, 2020-Ohio-649, ¶ 39. It is instructive to note, however, that when amending R.C. 2929.03(A) to provide four sentencing options for noncapital aggravated murder, the General Assembly did not then or thereafter enact any provision stating that a sentence so imposed under R.C. 2929.03(A) was not subject to any appellate review under that or any other section of the Revised Code.

{¶ 59} From my review of the statutory history, it is not clear whether the seemingly anomalous preclusion of appeals for aggravated-murder and murder sentences truly reflects a deliberate and conscious legislative-policy decision to single out these specific crimes for differential adverse treatment or whether this is simply the result of an unfortunate legislative oversight. If original intent is any indication, then the basis for seemingly barring appellate review would appear to have been based on the fact that there was only one sentence available at the time. If that is in fact the case, then R.C. 2953.08(D)(3) would now appear to have become quite literally a law of unintended consequences.

{¶ 60} I acknowledge that in *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 17, this court found that R.C. 2953.08(D) was unambiguous and "clearly means what it says: * * * a sentence [imposed for aggravated murder or murder pursuant to R.C. 2929.02 to 2929.06] cannot be reviewed." But *Porterfield*, which was decided on July 6, 2005, involved aggravated-murder sentences that were imposed prior to the March 2005 sentence-changing amendments effected by H.B. 184. Under that prior sentencing scheme, Porterfield in fact received the only sentence authorized by that prior law: 20 years to life on each of his aggravated-murder convictions. *Id*. at ¶ 2. *Porterfield* does not speak to whether the bar to appeal in R.C. 2953.08(D)(3) was intended to bar

all appeals pertaining to sentences once the former mandatory sentence was replaced by four discretionary sentencing options.[1]

{¶ 61} While one may question whether R.C. 2953.08(D)(3) now really means what it says, there is no denying that it says what it says. The text of R.C. 2953.08(D)(3) is still unambiguous: a sentence imposed for aggravated murder pursuant to R.C. 2929.02 to 2929.06 "is not subject to review under this section," i.e., R.C. 2953.08. But as discussed hereafter, that does not mean that the sentence is not subject to *any* appellate review.

*The plain language of R.C. 2953.08 indicates that it is not the exclusive method to*
*appealing a noncapital aggravated-murder sentence*

{¶ 62} By its terms, R.C. 2953.08(D)(3) states that only a noncapital aggravated-murder sentence is not subject to review *under R.C. 2953.08*. As the majority opinion recognizes, the introductory text of R.C. 2953.08(A) indicates that the appeal rights established by R.C. 2953.08 are " '[i]n addition to any other right of appeal,' " majority opinion at ¶ 15, quoting R.C. 2953.08(A), but R.C. 2953.08 "does not establish the *only* basis by which a party may appeal a sentence" [emphasis sic], *id*. at ¶ 15. The majority opinion correctly recognizes that in any criminal case, the court of appeals may review the judgment or final order of a court of record inferior to the court of appeals pursuant to R.C. 2953.02. *See also* R.C. 2505.03(A) ("Every final order, judgment, or decree of a court * * * may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction").

---

1. I would respectfully encourage the General Assembly to re-examine whether it intended to foreclose all appeals of sentences for noncapital aggravated murder and murder, giving particular consideration to whether there is any rational basis—in ordinary parlance or in the more particularized equal-protection sense—to deny such appeals to this particular class of offenders.

{¶ 63} In addition to these independent statutory rights to appeal, R.C. 2953.07 separately authorizes Ohio's courts of appeals to review criminal sentences that are claimed to be "contrary to law." It specifically provides as follows:

Upon the hearing of an appeal other than an appeal from a mayor's court, the appellate court may affirm the judgment or reverse it, in whole or in part, or modify it, and order the accused to be discharged or grant a new trial. The appellate court may remand the accused for the sole purpose of correcting a sentence imposed contrary to law, *provided that, on an appeal of a sentence imposed upon a person who is convicted of or pleads guilty to a felony that is brought under section 2953.08 of the Revised Code, division (G) of that section applies to the court.*

(Emphasis added.) R.C. 2953.07(A). S.B. 2 added this emphasized language to the statute. 146 Ohio Laws, Part IV, 7136, 7562. Thus, before and after the passage of S.B. 2, R.C. 2953.07 generally authorized—and authorizes—Ohio's appellate courts to review criminal sentences that were or are claimed to be "contrary to law."

{¶ 64} From the foregoing, I can conclude only that R.C. 2953.08 does not control, much less foreclose, an appeal of a criminal sentence that contests the discretionary sentence imposed under R.C. 2929.03(A) following a conviction for noncapital aggravated murder. Had the General Assembly intended to prohibit an appeal of a sentence for noncapital aggravated murder or murder, it could have said *somewhere* that such sentences "are not subject to appellate review." But stating that such sentences "are not subject to review" under R.C. 2953.08 does not mean that they are not subject to any appellate review at all. I therefore agree that R.C. 2953.08(D)(3) does not foreclose appellate review of an aggravated-murder sentence.

*The statutory rights to appeal a noncapital aggravated-murder sentence include but are not necessarily limited to appeals challenging the constitutionality of the sentence*

**{¶ 65}** I agree with the majority that the statutory right to appeal permits an appellate court to consider the constitutionality of an aggravated-murder sentence. To be clear, however, I believe that the statutory right to appeal under R.C. 2953.02 and 2953.07 include, but are not necessarily limited to, appeals challenging the constitutionality of an aggravated-murder sentence.

**{¶ 66}** For its part, the majority opinion appears to draw a distinction between constitutional  and statutory appeals when it looks "to the scope of the right to appeal provided in R.C. 2953.08 to see if Patrick's appeal—a constitutional challenge—is permitted under that statute." Majority opinion at ¶ 18.  I respectfully disagree with this portion of the majority opinion's analysis.  Because R.C. 2953.08(A) and (D)(3) expressly *except* noncapital aggravated-murder and murder sentences from being subject to appellate review under R.C. 2953.08, it is illogical for the majority to look to the scope of the appeal rights provided by R.C. 2953.08 to ascertain whether Patrick's constitutional challenge to his noncapital aggravated-murder sentence is within the scope of that statute.  R.C. 2953.08 tells us twice that it is not.

**{¶ 67}** The majority nevertheless proceeds to note that the appeals allowed by R.C. 2953.08(A)(1), (2), (3), (4) and (5) all expressly concern statutory sentencing requirements.  Majority opinion at ¶ 19-22.[2]  According to the majority,

2. Acknowledging here that a trial court's failure to comply with statutory sentencing requirements can be appealed for being "contrary to law" under R.C. 2953.08(A)(4) is inconsistent with this court's decision in *State v. Jones*, ___ Ohio St.3d ___, 2020-Ohio-6729, ___ N.E.3d ___, in which the court concluded that although R.C. 2929.11 and 2929.12 are statutory sentencing requirements mandated by the General Assembly for every felony sentence, the failure to comply with those statutory sentencing requirements is not subject to appeal pursuant to R.C. 2953.08.  I remain of the view that the failure to observe those statutory sentencing requirements can be reviewed on appeal for being "contrary to law." *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 45 (Donnelly, J., dissenting).

R.C. 2953.08 controls appeals that challenge the trial court's compliance with statutory sentencing requirements but does not control appeals that challenge the constitutionality of the trial court's sentence.

{¶ 68} To the extent the majority opinion purports to draw a distinction between constitutional-based and statutory-based appeals, I am not aware of any law that limits or otherwise qualifies the grounds upon which a criminal sentence can be challenged on appeal. As I have previously indicated, the General Assembly did not proscribe appeals of noncapital aggravated-murder sentences. Nor did it qualify appeals depending on whether the challenge is based on a constitutional argument. I therefore do not believe that we have the authority to allow appeals on certain grounds and disallow appeals on other grounds.

{¶ 69} In my view, R.C. 2953.08(D)(3) does not foreclose appellate review of an aggravated-murder sentence, and the statutory rights to appeal under R.C. 2953.02 and 2953.07 include, but are not necessarily limited to, appeals challenging the constitutionality of a sentence. For instance, an appeal could encompass an argument that a discretionary sentence was based on an illegal consideration such as the offender's race, ethnic background, gender, or religion. *See* R.C. 2929.11(C) (expressly forbidding a sentence based on the offender's race, ethnic background, gender, or religion). It is unfathomable to think that an offender's sentence based on such odious considerations could escape any appellate review just because the underlying crime was aggravated murder. What rational basis could justify that invidious discriminatory treatment?

{¶ 70} An appeal could likewise encompass—consistent with the law before the enactment of S.B. 2—a challenge to a sentence that was authorized by law and within the statutory range but was nevertheless an abuse of the sentencing court's discretion. What rational basis could justify a demonstrable abuse of judicial discretion?

**{¶ 71}** And an appeal could encompass a claim alleging that a discretionary sentence was imposed vindictively to punish the defendant for exercising his or her constitutional right to a trial. *See State v. O'Dell*, 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), paragraph two of the syllabus. On that point, the facts of this case are a source of particular concern for me. Appellant, Kyle Patrick, originally pleaded guilty and was sentenced to an aggregate sentence of life imprisonment with parole eligibility after 16 years. However, after Patrick's guilty plea was reversed, *see State v. Patrick*, 2016-Ohio-3283, 66 N.E.3d 169 (7th Dist.), his case proceeded to trial and Patrick, who was 17 years old at the time of his offenses, was thereafter given a far more severe penalty—life imprisonment with parole eligibility after 33 years.[3] And that sentence was imposed after the trial court had recognized that Patrick might not have been the shooter.

**{¶ 72}** Nevertheless, whether Patrick was forced to pay a trial tax[4] for exercising his constitutional right to a jury trial is an issue that cannot be explored further here, because Patrick did not raise that issue in the court of appeals or in this court.

**{¶ 73}** While my reservations with the majority opinion may be more with what is not said than with what is said, I agree with its conclusion here that R.C. 2953.08(D)(3) does not preclude an appellate court from considering the constitutionality of an aggravated-murder sentence. I accordingly concur with the court's judgment.

————————————

3. The aggregate sentence was 33 years to life based on the aggravated-murder sentence of 30 years to life, the consecutive 3-year firearm-specification sentence, and the concurrent 3-year tampering-with-evidence sentence.

4. *See State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8 ("a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law").

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 74} I agree with the majority that R.C. 2953.08(D)(3) does not preclude an appellate court from reviewing the constitutionality of a sentence for murder or aggravated murder. I dissent, however, from the majority's holding that the Eighth Amendment to the United State Constitution demands that a trial court must separately consider—on the record—the youth of a juvenile offender as a mitigating factor prior to imposing a sentence for life with the possibility of parole.

### *R.C. 2953.08 does not preclude an appellate court from reviewing a murder or aggravated-murder sentence when a defendant raises a constitutional claim regarding that sentence on appeal*

{¶ 75} R.C. 2953.08(D)(3) precludes a defendant from seeking review of a murder sentence pursuant only to an appeal brought under R.C. 2953.08. There are other ways to appeal a murder or aggravated-murder sentence—R.C. 2953.02 provides a general right to appeal and R.C. 2505.03(A) provides that "[e]very final order, judgment, or decree of a court * * * may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction." In *State v. Matthews*, 81 Ohio St.3d 375, 691 N.E.2d 1041 (1998), syllabus, this court held that R.C. 2505.03 applies to appeals in criminal cases.

{¶ 76} This court has explained that there are limits to sentencing review: "[T]he Court of Appeals cannot hold that a trial court abused its discretion by imposing too severe a sentence on a defendant convicted of violating an ordinance, where the sentence imposed is within the limits authorized by the applicable ordinance and statutes." *Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), paragraph one of the syllabus. However, there are exceptions to the general premise that once a defendant has been proved guilty of an offense beyond a reasonable doubt he is eligible for any statutory penalty associated with that offense. The discretion of the court does not extend to unconstitutional sentences:

Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, *so long as that penalty is not cruel and unusual*, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause * * *.

(Citations omitted, first emphasis sic, and second emphasis added.) *Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

{¶ 77} In reviewing a defendant's sentence under an Eighth Amendment claim in *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court stated, "Reviewing courts * * * should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional." A review of a sentence under the Eighth Amendment is not a review of the trial court's discretion:

Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits.

*Id*. at fn. 16.

{¶ 78} R.C. 2953.08(D)(3) does not preclude appellate review of a murder or aggravated-murder sentence, and an appellate court need not defer to the trial court's imposed sentence if that sentence is unconstitutional. Therefore, the appeal of appellant, Kyle Patrick, is properly before us.

### *The constitutionality of Patrick's sentence*

{¶ 79} I dissent from the majority's holding regarding the substance of Patrick's appeal. Patrick relies exclusively on the Eighth Amendment to the United States Constitution in appealing his sentence, arguing that his sentence violates that amendment's protection against cruel and unusual punishment because the trial court failed to take into consideration on the record Patrick's youth before imposing a sentence of life with parole eligibility after 33 years. The majority agrees, despite the lack of legal authority in support of that proposition. Today's holding is without precedent in the Eighth Amendment jurisprudence of this court or of the United States Supreme Court. And that is no surprise, given that the majority holds that a sentence of life in prison *with* the possibility of parole is the equivalent of a sentence of life *without* the possibility of parole for purposes of the Eighth Amendment. To the contrary, the two types of punishment are not equivalent. Pursuant to the Eighth Amendment, there is a categorical ban against the imposition of a life-without-parole sentences on all but the most incorrigible juveniles, and certain procedural protections have arisen—including a consideration of the youth of the offender before sentencing that person to life without parole—to ensure that the penalty is imposed on only those rarest of juveniles, those whose crimes reflect irreparable corruption. There is no Eighth Amendment categorical ban against the imposition of sentences of life *with* the possibility of parole, and therefore there is no Eighth Amendment-based procedure necessary to winnow the imposition of that sentence to only incorrigible defendants. The majority applies protections designed to

further categorical restrictions to a punishment against which there is no categorical ban.

**{¶ 80}** The Eighth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This court has stated:

> Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. *Robinson v. California* (1962), 370 U.S. 660, 676, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758, 768. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 30 O.O.2d 38, 203 N.E.2d 334, this court stressed that Eighth Amendment violations are rare. We stated that "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." *Id.* at 70, 30 O.O.2d at 39, 203 N.E.2d at 336. Furthermore, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *Id. See also State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus.

*State v. Weitbrecht*, 86 Ohio St.3d 368, 370-371, 715 N.E.2d 167 (1999).

**{¶ 81}** The original understanding of the Eighth Amendment, at least in the case of juveniles, has expanded from a consideration of merely the nature of the

punishment to how the punishment is procedurally imposed. Certain punishments have been found to be categorically unconstitutional for crimes that have been committed by juveniles, including the death penalty, *see Roper v. Simmons*, 543 U.S. 551, 568, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and a sentence of life without the possibility of parole for a juvenile who committed a nonhomicide offense, *see Graham v. Florida*, 560 U.S. 48, 74-75, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). But in *Miller v. Alabama*, 567 U.S. 460, 479-480, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the court began to focus on the procedural considerations that should be addressed before a court imposes certain punishments against a juvenile. In *Miller*, the court held that under the Eighth Amendment, trial courts cannot impose mandatory life-without-parole sentences—even on juvenile homicide offenders—because the automatic imposition of that penalty "runs afoul of [its] cases' requirement of individualized sentencing for defendants facing the most serious penalties," *id.* at 465. The court wrote that its "decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, [the court] did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Id*. at 483. In *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718, 734, 193 L.Ed.2d 599 (2016), the court clarified that *Miller* had "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." *Id*. at 734, citing *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), *abrogated by Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Therefore, the sentencing judge must "take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " *Montgomery* at 733, quoting *Miller* at 480. The court in *Montgomery* recognized that "a sentencer might encounter the rare juvenile offender who exhibits such irretrievable

depravity that rehabilitation is impossible and life without parole is justified." *Id*. at 733. But the court also acknowledged that *Miller* contained no requirement that trial courts make a finding of fact regarding a child's incorrigibility. *Id.* at 735.

{¶ 82} In *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, which was decided before *Montgomery*, this court went beyond the holding in *Miller* and held that a trial court must make some statement on the record taking into account an offender's youth before imposing a sentence of life in prison without the possibility of parole.

{¶ 83} Even with this shift to process from the core protection of the Eighth Amendment, the nature of the punishment has continued to be at the forefront. That is, there are procedural implications for courts because of the gravity of the punishment. The overriding concern is that the court not impose the punishment on someone undeserving. Today, relying on the Eighth Amendment, the majority imposes procedural requirements protecting against the imposition of punishments that have never been found to violate the Eighth Amendment for any class of people—sentences of life with the possibility of parole.

{¶ 84} In *Miller*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407, the United States Supreme Court held that the Eighth Amendment precludes the mandatory imposition of a life sentence *that does not include the possibility of parole* for a person who committed murder before the age of 18. And this court held in *Long* that a trial court must make some statement on the record that the court had taken into account an offender's youth before imposing a sentence of life in prison *without the possibility of parole*. But neither this court nor the United States Supreme Court has ever held that the Eighth Amendment requires a trial court to state at the time of sentencing that it has considered the youth of an offender before imposing a sentence that provides an opportunity for parole. Because a trial court that sentences a juvenile offender to a sentence of life with the possibility of parole after 33 years is not subject to the requirements of *Miller* or *Long*, I would hold that

the trial court's failure to specifically note on the record that it had considered Patrick's youth did not render the sentence unconstitutional under the Eighth Amendment. Whether Ohio's sentencing statutes require a trial court to consider an offender's youth in a case not involving a life-without-parole sentence is not before us. The only issue before us is whether the *Eighth Amendment* requires a trial court to consider the youth of an offender before imposing a life sentence that includes the possibility of parole after 33 years. The Eighth Amendment does not so require.

{¶ 85} At the center of the jurisprudence regarding juveniles and life-without-parole sentences is the nature of the sentence. *Graham*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, is the seminal case in which the court considered the constitutionality of life-without-parole sentences for juveniles. In *Graham*, the court held that the Eighth and Fourteenth Amendments prohibit the imposition of a life-without-parole sentence on a juvenile offender who did not commit a homicide. A fundamental aspect of the court's holding in *Graham* was its comparison of the characteristics of a life-without-parole sentence and a death sentence. Life-without-parole terms, the court wrote, "share some characteristics with death sentences that are shared by *no other sentences*." (Emphasis added.) *Id*. at 69. Although the state does not execute a defendant who has been sentenced to life without parole, "the sentence alters the offender's life by a forfeiture that is irrevocable." *Id*. A life-without-parole sentence takes everything from the defendant; "[i]t deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence." *Id*. at 69-70, citing *Solem,* 463 U.S. at 300-301, 103 S.Ct. 3001, 77 L.Ed.2d 637. A life-without-parole sentence " 'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days.' " (Brackets added in

*Graham*.) *Id*. at 70, quoting *Naovarath v. State*, 105 Nev. 525, 526, 779 P.2d 944 (1989). The court wrote that a life-without-parole sentence "gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." *Id*. at 79. A life sentence with the possibility of parole, on the other hand, does not carry the weight of a life-without-parole sentence. A juvenile sentenced to life with the possibility of parole *does* have a chance for fulfillment outside prison walls. He is *not* destined to remain in prison until death. Hope is *not* denied. Good behavior and character improvement are *not* immaterial. A sentence with the possibility of parole offers "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," *id.* at 75, while a sentence of life without parole does not.

{¶ 86} In *Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, at ¶ 27, this court pointed to the unique harshness of a life without parole sentence: "For juveniles, like Long, a sentence of life without parole is the equivalent of a death penalty. * * * As such, it is not to be imposed lightly, for as the juvenile matures into adulthood and may become amenable to rehabilitation, the sentence completely forecloses that possibility." This court also stated that while *Miller* did not bar a court from imposing life without parole, it is "because of the *severity of that penalty*, and because youth and its attendant circumstances are strong mitigating factors, that sentence should rarely be imposed on juveniles," (emphasis added) *id*. at ¶ 29. We further held that a trial court has a duty to clarify its reasoning before imposing life without parole "because a life-without-parole sentence implies that rehabilitation is impossible, when the court selects this most serious sanction, its reasoning for the choice ought to be clear on the record." *Id.* at ¶ 19. Because the trial court did not separately mention that Long had been a juvenile when he committed the offense, this court determined that it could not be sure how the court had applied that factor and therefore vacated the sentence and remanded the cause for resentencing. *Id*. at ¶ 27, 29.

{¶ 87} Again in *Long*, it was the seriousness of the sanction that gave rise to the procedural protection for the juvenile. Because the life-without-parole sentence is so grave and categorically banned except for only the worst offenders, a court must determine that a person who receives that sentence is properly within the small group of juveniles to whom it may apply. To ensure that this sentence is appropriate before a trial court imposes it, this court required an on-the-record finding of the trial court's reasoning.

{¶ 88} The protections afforded in *Graham*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, *Miller*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407, and *Long* all inure for persons for whom a life-without-parole sentence is imposed. Certainly, the lessened culpability associated with youth is also an important factor. But a sentence of life in prison without the eligibility for parole is the sentence by which the United States Supreme Court and this court have drawn the line for Eighth Amendment juvenile-offender-sentencing purposes. The Eighth Amendment's requirement that a trial court consider the youth of the defendant and the attendant characteristics of youth does not extend to Patrick's sentence of life imprisonment with parole eligibility after 33 years. Patrick asserts that for the purposes of requiring a court to consider the youth of a defendant before imposing a sentence, there "is no reason to distinguish a homicide case with a life sentence that is *not* life without parole * * * from a homicide case where [life without parole] is imposed." (Emphasis sic.) But that difference between penalties is vital—it is the lack of an opportunity for release that is the catalyst for the Eighth Amendment's requirements. When courts consider Eighth Amendment cruel-and-unusual-punishment issues, the *punishment* involved necessarily forms the basis of the analysis. It is the unique severity of and hopelessness engendered by a life-without-parole sentence imposed on a juvenile defendant—under which the defendant will never have the chance to prove himself worthy of release for a crime committed before full transition into adulthood—that impels the court's requirement to

consider youth under *Miller* and *Long*. When a juvenile offender faces a sentence that includes the prospect of parole eligibility during middle adulthood, the same concerns do not arise.

{¶ 89} Patrick can point to no pronouncement that there is an Eighth Amendment-based categorical restriction against a sentence of life with possibility of parole. A sentence of 33 years to life in prison comports with "*Miller*'s central intuition—that children who commit even heinous crimes are capable of change," *Montgomery*, ___ U.S. at ___, 136 S.Ct. at 736, 193 L.Ed.2d 599. This is in contrast to the sentences that have been held to violate the Eighth Amendment when imposed on juvenile offenders, which include a death sentence, a life-without-parole sentence for a nonhomicide, and a life-without-parole sentence imposed without consideration of the youth of the offender. Each of those sentences forecloses a juvenile offender from the opportunity to re-enter society without first considering whether he is amenable to rehabilitation, and that is why they have been held to violate the Eighth Amendment. A life sentence with the possibility of parole is different and is therefore not subject to the same mandates to comply with the Eighth Amendment. Therefore, although Patrick points out that his case involves the same "features of youth—delayed development, lessened moral culpability, all the things addressed in the cases" and that those features "are not ameliorated because a trial judge decides to select a life sentence that [allows for parole]," his sentence does not involve the same constitutional problems as the sentences involved in *Miller* and *Long*. Youth does not require dispensation from extended punishment; it guarantees only a meaningful chance to one day reenter society. Patrick's sentence gives him that.

{¶ 90} Pursuant to this court's and United States Supreme Court's jurisprudence, the features of a juvenile defendant's youth are almost always incompatible with a life-without-parole sentence, and therefore a sentencing court must consider a juvenile defendant's youth and the characteristics attendant to

38

youth before imposing that sentence. But when a sentence does not foreclose redemption and re-entry into society, as is the case here, the Eighth Amendment does not require a consideration of the juvenile defendant's youth and does not require that the record reflect that the court specifically considered the juvenile's youth at sentencing. So although Patrick's youth makes him comparable to the defendants in *Miller* and *Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, his sentence sets him apart from them.

**{¶ 91}** Patrick's sentence in this case grants him the opportunity for parole after he has served 33 years in prison. The possibility of parole exists for Patrick; he has the "hope for some years of life outside prison walls." *Montgomery*, ___ U.S. at ___, 136 S.Ct. at 737. And that hope is not illusory.

**{¶ 92}** But the majority suggests that that eventual release is a hopeless dream. It does so by impugning Ohio's parole system, citing to a context-free statistic that Ohio's parole rate was only 10.2 percent from 2011 to 2018, majority opinion at ¶ 33. The majority does not say how many of the persons seeking parole during those years were juveniles when they committed their crimes, how many had shown personal growth, or how many had already served 30 years. Here, the majority suggests that a life sentence with the possibility of parole is essentially a life sentence without the possibility of parole since achieving a positive result from the Parole Board is a long shot.

**{¶ 93}** The majority makes an important point that I agree with: "Certainly, before imposing a life sentence on a juvenile offender, there is room in our justice system for a trial court to make an individualized sentencing determination that articulates its consideration of the offender's youth, and all that comes with it * * *." Majority opinion at ¶ 41. Trial judges should endeavor to proceed that way. But the Eighth Amendment protection against cruel and unusual punishment does not demand it. And that is all we are considering in this case.

{¶ 94} The majority makes a point to state that pursuant to *Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, a trial court must consider the youth of the offender as a mitigating factor in every sentencing situation, pursuant to R.C. 2929.12(C) and (E). However, Patrick does not argue about what R.C. 2929.12 requires, he argues about what the Eighth Amendment requires. The trial court was under no constitutional obligation to enunciate on the record its findings about the impact of Patrick's youth in sentencing him.

{¶ 95} Here, although the trial court did not specifically state on the record that it had considered Patrick's youth before imposing its sentence, the record reflects that the trial court did consider Patrick's youth and its attendant characteristics before it imposed its sentence. In the sentencing entry, the trial court stated that it had "considered the record, oral statements, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and ha[d] balanced the seriousness and recidivism factors of Ohio Revised Code Section 2929.12." The statements made during the sentencing hearing by the state, Patrick's counsel, and Patrick's mother all called attention to Patrick's youth. The issue of Patrick's youth was squarely before the trial court at the time of sentencing.

{¶ 96} Despite the fact that the trial court had determined that the aggravated murder that Patrick committed was among the most senseless offenses it had ever seen, the court did not impose the harshest possible penalty. Based on that fact and the statements made during the sentencing hearing, I conclude that Patrick's youth factored into the trial court's sentencing decision.

{¶ 97} The Supreme Court in *Miller* sets forth five considerations that a court imposing a mandatory life-without-parole sentence on a juvenile offender who is tried as an adult is precluded from considering, therefore making such a sentence unconstitutional:

[First,] [m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. [Second,] [i]t prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. [Third,] [i]t neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. [Fourth,] * * * it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. *See, e.g.*, *Graham*, 560 U.S. at 78, [130 S.Ct. 2011, 176 L.Ed.2d 825] ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011) (discussing children's responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

(Ninth brackets added in *Miller*.) *Miller*, 567 U.S. at 477-478, 132 S.Ct. 2455, 183 L.Ed.2d 407.

{¶ 98} Each of those considerations was addressed in some way during Patrick's sentencing hearing. Patrick's counsel's statement was relevant to the court's consideration of Patrick's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and

consequences," *id.* at 477. Counsel stated that the idea of murder had not been contemplated by Patrick, that Patrick had acted recklessly and foolishly, and that an ill-prepared robbery led to a shooting death. He also spoke to another factor—the "incompetencies associated with youth," *id.*, including Patrick's inability to assist his counsel. Patrick's counsel explained that he could not convince Patrick to maintain the plea agreement that would have resulted in a murder conviction with a sentence of 16 years to life rather than an aggravated-murder conviction with a more severe sentence.

{¶ 99} Patrick's mother discussed in her statement the circumstances of the offense and how Patrick was susceptible to peer pressure; she said he was a wannabe gangster who hung around with 20-year-old street thugs. She mentioned his family life, which was by no means "brutal or dysfunctional," *id.*; instead, it could be considered to be a support system for an eventual reentry into life outside of prison. Her statement also reflected on another factor discussed in *Miller*—the possibility for rehabilitation; she talked about Patrick's capability of remorse and his loyalty and said that "he wears his heart on his sleeve."

{¶ 100} Finally, the prosecutor discussed the possibility of Patrick's rehabilitation. He recognized that courts have determined that juveniles should be given "some chance of having a life somewhere out there." This contrasts with the statement of the prosecutor in *Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, at ¶ 22, who used the defendant's youth against him, arguing that the defendant and his codefendants were so young that even if they served 30 years in prison they would prove a danger to society upon release.

{¶ 101} It is evident from the record—especially the trial court's reliance on the oral statements made during the sentencing hearing, which repeatedly referred to Patrick's youth and the attendant characteristics of his youth—that the trial court considered Patrick's youth before declining to enter the lengthiest sentence available and instead imposing the 33-years-to-life sentence.

{¶ 102} Although I would find the trial court did not violate Patrick's Eighth Amendment rights in this case, I do believe that it is time for Ohio lawmakers to undertake a meaningful study and review of the sentencing of juveniles tried as adults. But ours is not the power to rewrite sentencing laws. Whether the brain science cited by the court in *Graham*, 560 U.S. at 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (recognizing that "parts of the brain involved in behavior control continue to mature through late adolescence") and the penological considerations relating to that science might support a modernized sentencing scheme for juvenile offenders tried in adult court—e.g., amici curiae in support of Patrick suggest that juvenile offenders should become eligible for parole after serving 15 years of incarceration—establishing such a structure is not within the province of this court. "The power to define and classify and prescribe punishment for felonies committed within the state is lodged in the General Assembly * * *." *State v. O'Mara*, 105 Ohio St. 94, 136 N.E. 885 (1922), paragraph one of the syllabus, *overruled in part on other grounds*, *Steele v. State*, 121 Ohio St. 332, 168 N.E. 846 (1929). Other states have responded to the decisions in *Graham* and *Miller* by amending their sentencing statutes for juveniles tried as adults. *See Contreras*, 4 Cal.5th at 370, 411 P.3d 445, 229 Cal.Rptr.3d 249 (collecting statutes).

{¶ 103} "It is a fundamental precept of our tripartite form of state government that the General Assembly is the ultimate arbiter of public policy." *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 40. The General Assembly established the juvenile-bindover scheme contained in R.C. 2152.12, which allows the transfer of juvenile cases to adult court and allows juveniles to be tried as adults. It follows that it is within the General Assembly's authority to evaluate the body of science regarding the differences between juveniles and adults and the penological justifications for punishment of juveniles as adults and to modify Ohio's sentencing scheme accordingly.

**{¶ 104}** There is much in the majority opinion that I agree with. But this case is here because Patrick argues that the sentence imposed on him by the trial court violates the Eighth Amendment to the United States Constitution because the trial court failed to consider on the record Patrick's youth as mitigation. The Eighth Amendment simply has no such requirement regarding a juvenile homicide offender whose sentence includes the meaningful opportunity for parole. Neither this court nor the United States Supreme Court has ever said otherwise. Therefore, I dissent from that portion of the majority opinion.

DEWINE, J., concurs in the foregoing opinion.

_____

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellee.

John B. Juhasz, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Diane R. Brey, Deputy Solicitor General, urging affirmance for amicus curiae, Ohio Attorney General Dave Yost.

Timothy Young, Ohio Public Defender, and Brooke M. Burns, Assistant Public Defender; and Juvenile Law Center, Marsha L. Levick, and Andrew R. Keats, urging reversal for amici curiae, Office of the Ohio Public Defender, Juvenile Law Center, Inc., Central Juvenile Defender Center, Children's Law Center, Cuyahoga County Public Defender's Office, National Juvenile Defender Center, and Schubert Center for Child Studies.

_____